# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0469
══════════

TEXAS A&M UNIVERSITY–KINGSVILLE, PETITIONER,

v.

GERTRUD MORENO, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

## PER CURIAM

Gertrud Moreno sued her employer, Texas A&M University–Kingsville (TAMUK), alleging she was terminated in violation of the Texas Whistleblower Act (Act), TEX. GOV'T CODE § 554.002. Moreno, an assistant vice president and comptroller of TAMUK, claimed that her supervisor, Thomas Saban, fired her for reporting to the TAMUK president that Saban's daughter had received in-state tuition in violation of state law. The trial court granted TAMUK's plea to the jurisdiction, but the court of appeals reversed. 339 S.W.3d 902. In this appeal, TAMUK argues that Moreno's internal report falls short of what the Act requires: a good-faith report of a violation of law to an "appropriate law enforcement authority." We agree and accordingly dismiss Moreno's suit.

\*     \*     \*

Moreno contends she satisfied the Act by reporting a violation of law to TAMUK's president, Rumaldo Juarez. However, as we explain today in *University of Texas Southwestern Medical Center*

*v. Gentilello*, ___ S.W.3d ___ (Tex. 2013), the Act's restrictive definition of "appropriate law enforcement authority" requires that the reported-to entity be charged with more than mere internal adherence to the law allegedly violated. The Legislature's language is "tightly drawn," *id*. at ___, and centers on law enforcement, not law compliance:

> The Act, by its text and structure, restricts "law enforcement authority" to its commonly understood meaning. That is, it protects employees who report to authorities that actually promulgate regulations or enforce the laws, or to authorities that pursue criminal violations. The specific powers listed in section 554.002(b) are outward-looking. They do not encompass internal supervisors charged with in-house compliance and who must refer suspected illegality to external entities.

*Id*. at ___.

Moreno only offered evidence that Juarez had authority within the university to compel compliance with state law governing tuition waivers. As the court of appeals correctly described Moreno's claim, "Moreno alleged that Saban violated a statute and produced evidence that Juarez had the authority to enforce that statute *at TAMUK*." 339 S.W.3d at 911 (emphasis added). Moreno "produced evidence that Juarez had the ability to enforce compliance with the tuition waiver provision *on his campus* and apparently did so, as Saban was required to pay the additional out-of-state tuition amount shortly after Moreno's report." *Id.* at 912 (emphasis added). Juarez stated in his deposition that, as president of the university, he was generally authorized to make sure the university followed applicable laws, rules, and regulations. Moreno cited statutory and regulatory provisions concerning in-state tuition for children of faculty members. *E.g.*, TEX EDUC. CODE § 54.211 (previously designated § 54.059). She also pointed to provisions directing the university to correct tuition charges if it erroneously classifies a student as a resident. *Id.* §§ 54.056–.057. She

2

attested that she met with Juarez and advised him that Saban's daughter was not entitled to in-state tuition, that Saban was thereafter required to reimburse the university for the appropriate tuition, and that Saban then fired her.[1]

This evidence does not support a good-faith belief by Moreno that Juarez had authority to "regulate under or enforce the law alleged to be violated" or to "investigate or prosecute a violation of criminal law." TEX. GOV'T CODE § 554.002(b). As we hold in *Gentilello*, the Texas Act, unlike whistleblower statutes in other jurisdictions, does not protect purely internal reports. Under our Act, a law-enforcement authority "must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." ___ S.W.3d at ___. A supervisor is not an appropriate law-enforcement authority where the supervisor lacks authority "to enforce the law allegedly violated . . . against third parties generally." *Id.* at ___. "Indeed, holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law-enforcement authorities under the Act. Such a result would collide head-on with the Act's limited definition and our cases interpreting that definition." *Id.* at ___.

Moreno only offered evidence that Juarez oversaw internal university compliance with the in-state tuition requirement. "[A] whistleblower cannot reasonably believe his supervisor is an appropriate law-enforcement authority if the supervisor's power extends no further than ensuring the

---

[1] Saban and TAMUK claimed that Juarez approved the termination and that Moreno was fired for reasons unrelated to the in-state tuition incident.

3

governmental body *itself* complies with the law." *Id.* at ___. Juarez made the decision on behalf of the university that Saban needed to reimburse the university, but "an entity capable only of disciplining its employees internally is not an 'appropriate law enforcement authority' under the Act." *Id.* at ___.[2]

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant the petition for review, reverse the court of appeals' judgment, and dismiss the case.

**OPINION DELIVERED:** February 22, 2013

---

[2] Moreno contends that she also made disclosures to the Texas Higher Education Coordinating Board that were protected by the Act. Assuming the Board might sometimes qualify as an "appropriate law enforcement authority" under the Act, the Act requires that the plaintiff report "a violation of law" to the authority. TEX. GOV'T CODE § 554.002(a). Moreno's affidavit is clear that she did not report a violation of law to the Board. She attested only that she attended a conference where a representative of the Board was present, and that she made statements and posed questions about the rules governing in-state tuition for children of administrators that hold teaching positions, including a comment about the perceived practice at another campus. Her affidavit does not indicate that she stated at the conference a belief that a violation of law had occurred at TAMUK or elsewhere. Her deposition testimony confirmed that she did not report what she perceived to be the illegal tuition waiver to anyone outside of the university.

4