Opinion issued July 3, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00684-CV

————————————

**THE UNIVERSITY OF HOUSTON, Appellant**

**V.**

**JOHN CASEY, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-38441**

---

**OPINION**

This is an accelerated appeal from the trial court's denial of the University of Houston's plea to the jurisdiction. The University argues that the trial court erred in denying the plea because appellee John Casey did not satisfy the jurisdictional prerequisites to suit under the Texas Whistleblower Act, TEX. GOV'T CODE ANN.

§ 554.002 (West 2012). We conclude that Casey failed to raise a material fact issue regarding whether he had an objectively reasonable belief that his reports of the alleged violations of law were made to an "appropriate law enforcement authority." Accordingly, we hold that the University's sovereign immunity is not waived and that the trial court erred in denying the University's plea. We dismiss the case for lack of subject-matter jurisdiction.

## Background

Casey is a tenured Professor of Geology at the University and, in 1999, began serving as the Chairman of the Department of Earth and Atmospheric Sciences in the College of Natural Sciences and Mathematics. On August 17, 2011, Mark Smith, Dean of the College, removed Casey as Chairman because, according to the University, Casey had an autocratic and abusive leadership style and was unwilling to work with Dean Smith. But Dean Smith reappointed Casey as Chairman through May 2012 to ease the transition to new leadership.

In October 2011, Janok Bhattacharya, another professor in the department, told Casey that he had the opportunity to visit Venezuela as a paid consultant for a Venezuelan oil company. Casey directed Bhattacharya to the University's Manual of Administrative Policies and Procedures ("MAPP") and suggested that Bhattacharya request an opinion from Human Resources and the Provost office because Casey was concerned that the trip might violate University policy.

2

Bhattacharya received approval from Dean Smith and the Department's Associate Chair and traveled to Venezuela for 11 days.

Casey believed that Bhattacharya's consulting trip violated MAPP and state law. After Bhattacharya returned from Venezuela, Casey contacted Jane Olinger, who was the Assistant Vice President for Faculty Affairs, Dona Cornell, who was the Vice President of Legal Affairs of the University of Houston System and General Counsel of the University, and Don Guyton, who was the Chief Audit Executive for the University System. Casey inquired whether Bhattacharya's trip violated the University's policy on paid consulting or state law. Guyton responded that a "faculty member . . . who consults more than one day per week would have to use 'leave without pay' or make up time in order to meet requirements of the state law requiring all full-time benefits eligible employees to work 40 hours per week." Casey did not make any additional reports or contact anyone outside the University.

On February 27, 2012, nearly three months after Casey contacted University officials about Bhattacharya's trip, Dean Smith removed Casey as Chairman of the Department. On July 3, 2012, Casey sued the University, alleging that he was removed, in violation of the Texas Whistleblower Act, from his position of Department Chair in retaliation for reporting Bhattacharya's consulting activities.

On June 21, 2013, the University filed a plea to the jurisdiction, contending that its immunity was not waived and that the trial court lacked jurisdiction over Casey's whistleblower claim because Casey failed to report his concerns about Bhattacharya to an appropriate law enforcement authority, as required by the Act. In his response and supplemental response to the University's plea, Casey argued that Guyton and Cornell were appropriate law enforcement authorities. In support of his argument, Casey attached the following evidence: (1) his affidavit, (2) three University memoranda regarding "reporting of potential non-compliance," reporting "abuse, fraud, discrimination or retaliation," and "Reporting/Investigating Fraudulent Acts," and (3) Guyton's trial testimony and deposition from another case, *University of Houston v. Barth*, 403 S.W.3d 851 (Tex. 2013). On July 15, 2013, the trial court held a hearing and denied the University's plea.

## Discussion

In a single issue, the University contends that the trial court erred in denying its plea to the jurisdiction because Casey failed to raise a material fact issue regarding whether he had a good-faith belief that he made his report to an appropriate law enforcement authority.

4

## A.    Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Kamel v. Univ. of Tex. Health Sci. Ctr.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Kamel*, 333 S.W.3d at 681.

When, as here, a plea to the jurisdiction "challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (internal quotation omitted). The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.— Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must take as true all evidence in favor of the nonmovant and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Kirwan*, 298 S.W.3d at 622 (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d. 217, 228 (Tex. 2004)). If the evidence creates a fact question regarding jurisdiction, the trial

court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 227–28; *Kamel*, 333 S.W.3d at 681.

**B.    Applicable Law**

The Whistleblower Act provides:

(a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002.

Pursuant to section 554.0035, "[a] public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter." *Id.* § 554.0035 (West 2012). Additionally, the statute provides "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id.*

"A report of a violation of law under the Whistleblower Act must be in 'good faith.'" *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010). "Good

6

faith" in the Whistleblower Act context has both objective and subjective elements. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex. 2013). The employee "must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience." *Univ. of Houston v. Barth*, 403 S.W.3d 851, 856 (Tex. 2013) (citing *City of Elsa*, 325 S.W.3d at 626); *see* TEX. GOV'T CODE ANN. § 554.002(a).

In the context of section 554.002(b), "good faith" means (1) the employee believed the governmental entity was authorized to regulate under or enforce the law alleged to be violated in the report, or investigate or prosecute a violation of criminal law and (2) "the employee's belief was reasonable in light of the employee's training and experience." *Gentilello*, 398 S.W.3d at 683. "[A]n appropriate law-enforcement authority must be actually responsible for regulating under or enforcing the law allegedly violated" and must have law enforcement authority over "third parties" outside of the entity. *Id.* at 685–86. "It is not simply an entity responsible for ensuring internal compliance with the law allegedly violated." *Id.* at 685. "Other states' whistleblower laws accommodate internal reports to supervisors; Texas law does not." *Id.* at 682.

Under Texas law, "a whistleblower cannot reasonably believe his supervisor is an appropriate law-enforcement authority if the supervisor's power extends no

7

further than ensuring the governmental body itself complies with the law." *Id.* at 689. (Emphasis omitted). Thus, "an employer's power to conduct internal investigative or disciplinary procedures does not satisfy [the] standard for appropriate law enforcement authority under the Act." *State v. Lueck*, 290 S.W.3d 876, 886 (Tex. 2009) (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320–21 Tex. 2002)). "[L]odging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the Whistleblower Act." *Gentilello*, 398 S.W.3d at 687.

Rather, "for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." *Id.* at 686; *see Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443, 445 (Tex. 2013) ("[A] report to someone charged only with internal compliance is jurisdictionally insufficient under the Whistleblower Act."); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) ("'Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status' under the Whistleblower Act.") (quoting *Gentilello*, 398 S.W.3d at 686). A supervisor is not an appropriate law-

8

enforcement authority where the supervisor lacks authority "to enforce the law allegedly violated . . . against third parties generally." *Gentilello*, 398 S.W.3d at 686. "Indeed, holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law-enforcement authorities under the Act. Such a result would collide head-on with the Act's limited definition and our cases interpreting that definition." *Id.* at 686.

## C.  Analysis

The University contends that Casey's reports to the University did not constitute good-faith reports to appropriate law-enforcement authorities because no evidence suggests that Casey reasonably believed that Guyton, Cornell, or Olinger had authority to (1) regulate under or enforce the law purportedly violated or (2) investigate or prosecute suspected criminal wrongdoing. Casey contends that the trial court correctly denied the University's plea because he "reported fraud and theft to Guyton and Cornell, authorities designated by the University to investigate criminal activity and to regulate under or enforce the law alleged to be violated in the report."

The Texas Supreme Court recently underscored its earlier holdings that reports to employees having authority to enforce internal compliance and lacking authority over third parties cannot satisfy the Act's jurisdictional requirements.

9

*See Gentilello*, 398 S.W.3d at 688. In that case, Gentilello, who was a doctor, reported an alleged violation of federal law to another doctor who was the Clinical Department Chair responsible for ensuring that the hospital in which they both worked complied with Medicare and Medicaid law. *Id.* at 682. But the evidence showed that the department chair's power extended only "to urge compliance or purge noncompliance." In other words, his authority was "purely internal" and did not relate to third parties. *Id.* at 684. The *Gentilello* Court held that "[a]uthority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement status." *Id.* at 686. Making internal reports to employees responsible for internal compliance does not satisfy the Whistleblower Act's jurisdictional requirement that the "report [be] made to an appropriate law enforcement authority." *Id.* at 688.

Having reviewed all of the evidence, we conclude that under *Gentilello*, Casey failed to raise a material fact issue regarding whether he had a reasonable belief, based on his training and experience, that Guyton or Cornell was an appropriate law enforcement authority under the Texas Whistleblower Act.[1]

### 1.    The University's Evidence

In support of its plea, the University offered the affidavits of Guyton, Cornell, and Olinger to demonstrate that they have no law enforcement authority as

---

[1] In his petition, Casey alleged that he also made reports to Olinger. But Casey adduced no evidence regarding Olinger in response to the University's plea.

10

to any third parties outside the University. Guyton averred that he is "the Chief Audit Executive of the Internal Auditing Department of the University of Houston System," and is "responsible for managing the activities of the Internal Auditing Department." Cornell averred that she is "responsible for all legal matters affecting the System and each of its campuses," including transactional matters, compliance and ethics, athletics and student issues, and many other legal matters affecting the University. Olinger averred that she is an "Assistant Vice President for Faculty Affairs" and "facilitate[s] the administrative processing of faculty appointments . . . [and] review[s] and analyze[s] relevant academic policies and procedures, as needed."

In their respective affidavits, Guyton, Cornell, and Olinger each averred: "I have no authority to investigate or prosecute alleged violations of criminal law, nor do I have the authority to regulate under or enforce any laws . . . I have no authority to enforce, regulate, investigate, or prosecute violations of law against any third parties outside of UH, and I have no authority to promulgate regulations governing the conduct of such third parties."

### 2. Casey's Evidence

In his response to the University's plea, Casey proffered his affidavit, three University memoranda that he had received before reporting Bhattacharya's

11

allegedly improper consulting trip, and Guyton's testimony from *Barth*. We consider these in turn.

Casey's affidavit constitutes evidence that he subjectively believed that Guyton and Cornell were appropriate law enforcement authorities under the Act. But "good faith" in the Whistleblower Act context has both subjective and objective components. *Gentilello*, 398 S.W.3d at 683. To meet the *objective* component, Casey bore the burden to adduce evidence raising a material fact issue regarding whether his belief was reasonable in light of his training and experience. *See id.* (honest belief that person was appropriate law enforcement authority can only satisfy good-faith requirement "if a reasonably prudent employee in similar circumstances" would have thought so); *Franco*, 417 S.W.3d at 445–46 (plaintiff failed to adduce evidence that raised a fact issue about whether his belief was objectively reasonable); *see also Ortiz v. Plano Indep. Sch. Dist.*, No. 02-13-00160-CV, 2014 WL 24227, at \*3 (Tex. App.—Fort Worth Jan. 2, 2014, pet. denied) (applying *Barth* and *Gentilello* and holding trial court properly granted plea because Ortiz failed to raise a fact issue regarding whether board to whom she reported had appropriate law enforcement authority).

Casey offers the three memoranda and Guyton's testimony from *Barth* as evidence that he raised a fact issue as to the objective element of the inquiry. We conclude that this evidence is insufficient to defeat the plea, because none of it

raises a material fact issue regarding whether Casey's belief that Cornell and Guyton had law enforcement authority as to third parties was reasonable based on his training and experience.

Casey averred that he has no legal training and that his "subjective good faith believe is based on objective information and documents that [he] received as a UH employee": (1) a University memorandum entitled "Institutional Compliance Program," (2) a one-page electronic message from the Chancellor, Renu Khator, regarding "Zero Tolerance for Improper Conduct," and (3) the University's System Administrative Memorandum, entitled "Reporting/Investigating Fraudulent Acts." These three memoranda focus on internal compliance and direct employees to report illegal activity, including fraud, internally, to University officials. Notably, the memorandum entitled "Reporting/Investigating Fraudulent Acts," states that the University will forward information of suspected fraud to the "appropriate authorities for criminal prosecution" and that "[l]aw enforcement will investigate and refer to their jurisdiction of a magistrate/district attorney."[2] Nothing in these memoranda suggests that University officials have authority to enforce or promulgate laws against third parties outside the University; rather, the memoranda

---

[2] Casey also argues that Guyton is "part of the Texas State Auditor's Office, which is authorized to investigate suspected criminal activity." But Casey adduces no evidence to support his claim that Guyton is "part of" the SAO. In fact, Guyton's deposition testimony from *Barth* and the "Reporting/Investigating Fraudulent Acts" memorandum state that if Guyton believes there is a loss to the University, he will notify the SAO, which itself would decide whether to investigate.

merely state that University officials are responsible for and have authority to urge internal compliance and purge noncompliance and may *communicate* alleged violations to law enforcement authorities and potentially facilitate their investigation. Accordingly, the memoranda do not raise a material fact issue as to whether Guyton or Cornell has law enforcement authority against third parties. *See Gentilello*, 389 S.W.3d at 687 ("[A]n entity capable only of disciplining its employees internally is not an 'appropriate law enforcement authority' under the Act."); *Canutillo ISD*, 409 S.W.3d at 655 (policy authorizing internal auditor to assist in investigation of suspected fraudulent activities did not transform auditor into appropriate law enforcement authority).[3]

Guyton's deposition and trial testimony from *Barth* are likewise insufficient. Casey argues that Guyton's deposition testimony from *Barth* shows Guyton's department "is required to investigate suspected fraudulent activity, such as the kind Dr. Casey reported." In *Barth*, the Texas Supreme Court dismissed a University of Houston professor's whistleblower claim where he made reports of alleged violations of University policy and state law to four administrators,

---

[3] Casey also argues that "Cornell is authorized to enforce or regulate the law through her ability to file a civil action against third parties to recover any losses incurred by UH as a result of criminal conduct, such as the kind Dr. Casey reported." But Casey does not explain, let alone adduce evidence to support, how a policy discussing Cornell's authority to bring or participate in civil litigation on behalf of the University confers upon her law enforcement authority as against third parties.

14

including Guyton and the General Counsel.[4] The Court held that these administrators were not "appropriate law enforcement authority" because none "could have investigated or prosecuted criminal law violations against third parties outside of the University" and none "could have enforced state law or regulations regarding government contracts against any third party outside of the University." *Barth*, 403 S.W.3d at 857–58.

As a preliminary matter, Casey does not contend that he read Guyton's testimony from *Barth* before reporting the allegedly fraudulent conduct or that it otherwise served as the basis for his belief that Guyton was an appropriate law enforcement authority. Even if he had, Guyton's testimony in *Barth* does not help Casey. It merely underscores the point that agencies outside the University and law enforcement authority are "the ones who actually investigate the criminal activity" and that University officials may, but do not necessarily, facilitate their investigation. Notably, the *Barth* Court held that this was insufficient to establish jurisdiction:

> [T]he fact that Guyton can "inquire" into allegations of malfeasance does not mean that he can "regulate or enforce" the law, as required by subsection 554.002(b)(1) of the Whistleblower Act. Further, Barth provided no evidence that Guyton could have enforced state law or regulations regarding government contracts against any third party outside of the University.

*Barth*, 403 S.W.3d at 858.

---

[4] Cornell was not the University's General Counsel at the time.

15

Casey argues that *Barth* is distinguishable because the Supreme Court held that the plaintiff's "belief must have been reasonable based on his training and experience." *See Barth*, 403 S.W.3d at 856 (citing *City of Elsa*, 325 S.W.3d at 626). Casey contends he differs from Barth because, unlike Barth, he is not a licensed attorney, has no legal training, and did not serve on the faculty senate. But the Supreme Court has held that plaintiffs who, like Casey, lacked legal training, education, or experience also failed to raise a fact issue about whether their belief that the internal employee had law enforcement authority was *reasonable*. *See Canutillo ISD*, 409 S.W.3d at 655 (plaintiff was school district's executive director of facilities and transportation); *Tex. A&M Univ.-Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013) (plaintiff was assistant vice president and comptroller of university); *Gentilello*, 398 S.W.3d at 684 (plaintiff was professor of surgery at university medical center); *City of Elsa*, 325 S.W.3d at 628 (plaintiff was city manager); *Lueck*, 290 S.W.3d at 885–86 (plaintiff was assistant director of Texas Department of Transportation's traffic analysis section); *Needham*, 82 S.W.3d at 321 (plaintiff was crew chief in Texas Department of Transportation's Geodetic Control Section).

Similarly, Casey contends that this case is distinguishable from *Gentilello* because, in *Gentilello*, the plaintiff reported the allegedly illegal conduct to a supervisor, whereas Casey made reports *about his supervisor* to Guyton and

16

Cornell. But whether an employee reports allegedly fraudulent conduct to his supervisor is not the relevant inquiry. Rather, we must determine whether a whistleblower holds a reasonable belief that the person to whom he reports has law enforcement authority against third parties. *Gentilello*, 398 S.W.3d at 689. We conclude that it is inconsequential that Casey did not make the reports to his supervisor. *See Barth*, 403 S.W.3d at 853, 857–58 (applying *Gentilello* where employee reported supervisor to Guyton, general counsel, and other university administrators); *Moreno*, 399 S.W.3d at 129–30 (applying *Gentilello* where university comptroller reported to university president responsible for internal compliance that employee's supervisor engaged in unlawful conduct).

In sum, we conclude that Casey failed to raise a material fact issue regarding whether he had a reasonable belief that Guyton or Cornell had law enforcement authority against third parties.[5] *See Barth*, 403 S.W.3d at 858 (plaintiff failed to meet objective component of good-faith test because adduced no evidence that his belief that person to whom he reported had appropriate law enforcement authority was reasonable); *Gentilello*, 389 S.W.3d at 686 (holding no jurisdiction where

---

[5]     Casey also contends that seven sections of the Texas Education Code confer upon the University authority to regulate fraud and investigate or prosecute violations of criminal law against third parties. Notably, Casey does not argue that he formed a reasonable belief that Guyton or Cornell had such authority by reviewing the Texas Education Code before reporting to them. In any event, these statutes do not confer upon the University law enforcement authority as defined by the Whistleblower Act. *See* TEX. EDUC. CODE ANN. §§ 51.007, 51.108, 51.202, 51.244, 51.932(b), 51.935, 51.969 (West 2012).

person to whom employee reported "lacked any such power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally.").

## Conclusion

We reverse the trial court's order denying the University's plea to the jurisdiction, and render judgment granting the University's plea to the jurisdiction and dismissing the case for lack of subject matter jurisdiction with prejudice.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.