# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0567
════════════

TEXAS DEPARTMENT OF HUMAN SERVICES, PETITIONER,

v.

OLIVER OKOLI, RESPONDENT

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
════════════════════════════════════════════════════════

JUSTICE DEVINE, joined by JUSTICE WILLETT and JUSTICE LEHRMANN, dissenting.

The Texas Whistleblower Act prohibits a governmental entity from suspending or terminating a public employee, who in good faith reports another public employee's violation of law to an appropriate law enforcement authority. TEX. GOV'T CODE § 554.002(a). "[A] report is made to an appropriate law enforcement authority if the authority is a part of a . . . governmental entity . . . that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id*. § 554.002(b). Although the agency to whom Okoli reported the wrongdoing clearly possesses the powers enumerated above, the Court nevertheless concludes that Okoli's report was not made to an appropriate law enforcement authority because the individuals in that agency to whom he reported did not themselves possess these powers. The Court's focus on individual authority rather than the authority of the governmental entity receiving the report is a departure from prior case law, and its

opinion parses the whistleblower statute so finely as to eliminate any good-faith standard. Because statutory good faith has no meaning under the Court's writing, I dissent.

Since 2002, we have issued eight opinions shaping the contours of a good-faith report to an "appropriate law enforcement authority." *Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443 (Tex. 2013) (per curiam); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653 (Tex. 2013) (per curiam); *Univ. of Hous. v. Barth*, 403 S.W.3d 851 (Tex. 2013) (per curiam); *Tex. A & M Univ.–Kingsville v. Moreno*, 399 S.W.3d 128 (Tex. 2013) (per curiam); *Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680 (Tex. 2013); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 624 (Tex. 2010) (per curiam); *State v. Lueck*, 290 S.W.3d 876 (Tex. 2009); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314 (Tex. 2002). In each of these cases, the Court ruled against the whistleblower, observing that internal agency reports to a supervisor were not whistleblower reports to an appropriate law enforcement authority because the agency itself generally lacked authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved. In short, the governmental entity receiving the report was not an appropriate law enforcement authority because it was powerless to act on the report beyond matters of internal discipline.

For example, in *Texas Department of Transportation v. Needham*, a TxDOT employee reported to two TxDOT supervisors and a human resources employee that another TxDOT worker was driving drunk during a work assignment. 82 S.W.3d at 316. We reasoned that an authorized law enforcement authority was a governmental entity with the power to regulate outside itself. We further concluded that TxDOT was not such an entity because it lacked "authority to regulate under or enforce the Texas' driving while intoxicated laws" or "to investigate or prosecute these criminal

2

laws." *Id*. at 320. Similarly, *State v. Lueck* involved another TxDOT employee who claimed that an email to his supervisor was an appropriate report, and again we held that the plaintiff did not allege a whistleblower claim because the report to TxDOT was not made to an authorized law enforcement authority. 290 S.W.3d at 885-86. Thereafter, several cases, decided in 2013, elaborated further on the statute's requirement of a good-faith report to an appropriate law enforcement authority. *See Barth*, 403 S.W.3d 851; *Moreno*, 399 S.W.3d 128; *Gentilello*, 398 S.W.3d 680.

In *Gentilello*, a professor of surgery at a state medical school complained to his supervisors that medical residents were not being supervised properly. 398 S.W.3d at 682. The professor subsequently sued his employer, alleging retaliation for his report. *Id.* We concluded that because the professor's supervisors could only ensure internal compliance, and not regulate under or enforce the law against third parties outside the medical school, the plaintiff could not pursue his claim. *Id*. at 687-88. We explained that an authorized law enforcement authority was a governmental entity that possessed outward-looking enforcement or regulatory powers but that an employee's internal report to such an entity could, under the appropriate circumstances, still be a good faith report to an authorized law enforcement authority:

> As we have held, an appropriate law-enforcement authority must be actually responsible for regulating under or enforcing the law allegedly violated. It is not simply an entity responsible for ensuring internal compliance with the law allegedly violated.

> \* \* \*

> The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity

3

> itself, or it must have authority to promulgate regulations governing the conduct of such third parties.
>
> \* \* \*
>
> We do not hold that a Whistleblower Act report can *never* be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large.

*Id*. at 685-86.

Two *per curiam* opinions promptly followed *Gentilello*. *Moreno* held that a plaintiff's internal report to her supervisors cannot comply with the Act "if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law." 399 S.W.3d at 130 (quoting *Gentilello*, 398 S.W.3d at 689). *Barth* similarly involved another purely internal report within a university alleging "questionable accounting practices" and the like. 403 S.W.3d at 853. We held that Barth's report (even if he alleged a violation of law) was not sufficient because there was no evidence, given Barth's training and experience, of his objective good-faith belief that he was reporting violations of law to an entity that could have enforced, investigated, or prosecuted similar violations against third parties. *Id*. at 857-58.

The above authorities make clear that the Whistleblower Act does not protect a public employee who makes a purely internal report to an entity that does not have authority to enforce or regulate under the law against those outside the employee's agency. But when a report is made internally to an entity that possesses the authority to enforce or investigate violations by others than

just its own employees, the report can form the foundation for a whistleblower complaint if there is evidence of good faith.

Okoli's former employer, the Texas Department of Human Services (TDHS), possesses such outward-looking authority. It has its own Office of Inspector General (OIG) with specific statutory authority to enforce and investigate violations of law, not just by TDHS employees but by others outside the agency as well. *See* TEX. GOV'T CODE § 531.102. It has its own regulations in the *Texas Administrative Code* which codify its responsibilities "for the enforcement of state law relating to the provision of health and human services in Medicaid and other HHS programs." 1 Tex. Admin. Code § 371.11(a). And, it possesses specific statutory authority to conduct civil and criminal investigations, not only of TDHS personnel, but also of those outside the agency. TEX. GOV'T CODE §§ 531.102, .1021, .103; *see also* Tex. Admin. Code §§ 371.11, .1603. Assuming that Okoli's report to an entity possessing law enforcement authority was not alone sufficient to invoke the protections of the Whistleblower Act, the issue remains as to whether his report was nevertheless in good faith.

Even when a plaintiff fails to report directly to an appropriate law enforcement authority, the plaintiff is not without recourse. The Act protects public employees who believe in good faith that their reports were to an authorized law enforcement authority, even though their belief may turn out to be incorrect. To determine "good faith," we have fashioned a two-part test with both subjective and objective components. *Needham*, 82 S.W.3d at 321. This good-faith test requires that the employee demonstrate that (1) he or she believed the report was to an authorized law enforcement authority and (2) such "belief was reasonable in light of the employee's training and experience." *Id*. Under the subjective test, the employee must think he or she is reporting to an authorized law

5

enforcement authority. Under the objective test, the belief cannot be absurd; it must be one that would be shared by a reasonable employee. *See id.* at 320-21.

In *Gentilello*, we held that, given his training and expertise, the plaintiff should have known that his reports were not made to an appropriate law enforcement authority because he knew his supervisor could only ensure internal compliance with the law. 398 S.W.3d at 688. Similarly, the plaintiff in *Moreno* demonstrated that her supervisor and agency were charged simply with ensuring internal compliance and not with external enforcement of the law. 399 S.W.3d at 129-30. She could therefore not show a good-faith belief that she had reported to an appropriate law enforcement authority.

*Barth* involved a University of Houston professor who reported questionable accounting practices and mishandled funds by a university dean to the university's CFO, general counsel, an internal auditor, and an associate provost. 403 S.W.3d at 853. We concluded the Act did not protect Barth, who was also trained as an attorney, because the individuals to whom Barth reported were charged only with the university's internal regulation and lacked the traditional, outward-looking law enforcement authority required by the Act. *Id.* at 857-58. The case is perhaps most similar to Okoli's in that the University, like TDHS, has an internal law-enforcement department—the university police. We concluded, however, that "given Barth's legal training and experience as a practicing attorney," there was no evidence of "the objective component of the good-faith test for reporting a violation of law to an appropriate law enforcement authority." *Id*. at 858. *Barth* is therefore factually distinguishable from this case in that Okoli's training and experience support rather than negate his good-faith belief that his reports were to an authorized law enforcement authority.

6

Two key pieces of evidence establish at least a fact question on the issue of Okoli's subjective-and-objective reasonableness as compared to a reasonable employee with similar training and experience. First, Okoli presented documentary evidence that, as part of his job, he received specific training that his chain of command could and would determine to whom to refer his complaint within the agency, including to those within the agency with civil and criminal law authority to act within or outside the agency. Okoli further presented evidence of a prior unrelated incident in which he failed to follow his training when making a report of wrongdoing and was reprimanded to follow agency protocol. There is evidence then of an internal agency policy establishing a mandatory and exclusive avenue to reach an outward-looking, but also internal, law enforcement authority and that reports made via this established policy could reasonably be considered to be direct reports to the enforcement arm of the state agency. In short, there is evidence that Okoli's chain of command functioned as an intake clerk for the OIG, thus substantiating Okoli's good-faith belief that a report to his supervisor under institutional protocol was in fact a report to the OIG. Second, there is no dispute but that the OIG was the appropriate place for such complaints.

This case is quite old, but procedurally it remains an infant, frozen in time by the State's preliminary plea to the jurisdiction. Although the trial court denied that plea almost eight years ago, the State appealed, and the State's appeal has bounced between the court of appeals and this Court ever since. The court of appeals has twice affirmed the trial court's interlocutory order denying the jurisdictional plea, and this is our second look at the plea. Such a plea may be granted only if the plaintiff's pleadings "affirmatively negate the existence of jurisdiction" or the jurisdictional facts are not in dispute. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex. 2004).

Further, a court must indulge every reasonable inference and resolve any doubts in favor of the party resisting the plea. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). Under that standard and this record, the trial court did not err in denying the State's preliminary plea.

It may be that a court or jury will ultimately find Okoli's reliance on his training and experience unconvincing or his purported belief in what he was told objectively unreasonable. But, for purposes of evaluating the jurisdictional facts, I cannot agree with the Court that there is no evidence of Okoli's good faith. In *Gentilello*, we left open the door that good faith might bridge the gap between internal agency reports and reports to an appropriate law enforcement authority in limited circumstances. Today, the Court closes that door, and with it any meaning the Legislature might have intended for "good faith."

Because there is some evidence that the defendant did require and train Okoli to submit whistleblower claims to his chain of command for investigation, regulation, enforcement, or prosecution by the OIG, I conclude there exists a fact question of Okoli's good faith, which supports the lower courts' decisions to deny the plea to the jurisdiction. I would accordingly affirm the court of appeals' judgment and allow the case to proceed in the trial court. Because the Court instead renders judgment for the State on its jurisdictional plea, I respectfully dissent.

_____
John P. Devine
Justice

Opinion Delivered: August 22, 2014