

NUMBER 13-13-00596-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANGELA JO CARTER,                                                          Appellant,

v.

TEXAS DEPARTMENT OF
MOTOR VEHICLES,                                                          Appellee.

On appeal from the 200th District Court of
Travis County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Garza**

By a single issue in this Texas Whistleblower Act case, *see* TEX. GOV'T CODE ANN.

§ 554.002(a) (West, Westlaw through 2013 3d C.S.), appellant Angela Jo Carter contends

that the trial court erred in granting the plea to the jurisdiction and motion for summary

judgment filed by appellee, the Texas Department of Motor Vehicles ("TDMV"). We affirm the trial court's judgment.

## I. BACKGROUND[1]

On October 1, 2010, Carter was hired by TDMV for the position of Historically Underutilized Business ("HUB") Coordinator. Although Carter's background included prior employment with other state agencies, TDMV policy provided that Carter's employment begin with a six-month probationary period. Carter's immediate supervisor was Purchasing Director David Chambers.

Over the next several months, Carter raised several issues and complaints regarding her co-workers and TDMV's organizational structure. Among other issues, Carter questioned TDMV's policy prohibiting employees from accepting free meals at privately-sponsored events, complained that she was underpaid, complained that she was denied permission to move to a different workspace because she was disturbed by a hearing-impaired co-worker, complained that she was required to utilize files kept in a central location instead of keeping copies of regularly-used files at her desk, complained that some of her co-workers lacked skills and expertise, and suggested that being supervised by Chambers was interfering with her ability to perform her job duties. Many of these complaints and issues were discussed in emails which are included in the record.

On January 27, 2011, Chambers provided Carter with notice of probationary dismissal, effective January 31, 2011. Carter sued, alleging that her termination was in violation of the Texas Whistleblower Act ("the Act"). *See id.*

TDMV filed a combined plea to the jurisdiction and motion for summary judgment

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

in which it argued, among other things, that the trial court lacked jurisdiction because Carter "has failed to state a valid claim and therefore cannot invoke the limited waiver of sovereign immunity under the Texas Whistleblower Act." *See id.* § 554.0035 (West, Westlaw through 2013 3d C.S.) (providing that sovereign immunity is waived for a suit by a public employee alleging a violation of the Act). Specifically, TDMV argued in its plea—as it does on appeal—that Carter cannot state a viable claim under the Act because she did not report a good faith belief of a violation of law to an appropriate law enforcement authority prior to receiving notice of her termination. *See id.* § 554.002(a); *State v. Lueck*, 290 S.W.3d 876, 882 (Tex. 2009) (holding that the Act imposes a limited waiver of immunity that allows consideration of section 554.002(a) elements to the extent necessary to determine jurisdiction). TDMV attached evidence to its plea and motion, including: (1) Carter's deposition; (2) Chambers's deposition and affidavit; (3) Carter's discovery responses; and (4) affidavits and depositions of Carter's TDMV co-workers.

In its motion for summary judgment, TDMV argued that, even if the trial court had jurisdiction, TDMV was entitled to summary judgment. TDMV argued that it had a legitimate non-retaliatory basis for terminating Carter. It further argued that Carter cannot establish that she made a good faith report of a violation of law to an appropriate law-enforcement authority and that she certainly cannot establish that, "but for" the alleged report, she would not have been terminated. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) ("To show causation, a public employee must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct.").

Carter filed a response to TDMV's plea to the jurisdiction and motion for summary

3

judgment. Carter attached the following to her response: (1) her deposition and corrections to her deposition; (2) her affidavit[2]; (3) an excerpt from the TDMV policy and procedures manual regarding the "initial employment probationary period"; (4) the deposition of Jeff Kushaney, a TDMV purchaser and co-worker of Carter; (5) various emails from Carter to Chambers and others; and (6) a document prepared by Chambers detailing issues and problems related to Carter's employment.

On June 26, 2013, the trial court granted TDMV's plea to the jurisdiction[3] and motion for summary judgment and dismissed Carter's claims with prejudice.[4]

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Whether a court has subject-matter jurisdiction is a question of law which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* When subject-matter jurisdiction is premised on a cause of action under the whistleblower act, the plaintiff must allege facts which, if true, would establish a violation of that act. [*Lueck*, 290 S.W.3d at 880–81]. When a plea to the jurisdiction challenges the pleadings, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Miranda*, 133 S.W.3d at 226–27. If the pleadings do not affirmatively demonstrate an incurable defect in jurisdiction, then the plaintiff should have the opportunity to amend before the plea can be granted. *Id.*; *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, the trial court may promptly grant the plea without allowing time to amend. *Miranda*, 133 S.W.3d at 227.

However, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We do so because

---

[2] We note that TDMV filed numerous objections to various statements in Carter's affidavit. The trial court granted most of TDMV's objections, thereby striking substantial portions of the affidavit. Carter does not complain on appeal of the trial court's rulings on TDMV's objections. Therefore, we may not consider those portions of the affidavit.

[3] Because we find that the trial court properly granted TDMV's plea to the jurisdiction, we need not address its motion for summary judgment. *See* TEX. R. APP. P. 47.1.

[4] Carter's brief notes that TDMV's plea to the jurisdiction and motion for summary judgment were "heard" by the trial court on June 24, 2013, but no reporter's record is included in the record before us.

4

> courts are required to determine if they have subject-matter jurisdiction at the earliest possible moment. *Miranda*, 133 S.W.3d at 226. Where, as here, the jurisdictional issues and accompanying evidence implicate the merits of the case, the defendant "is put to a burden very similar to that of a movant for summary judgment." *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.). If the record raises a fact question that requires addressing the merits of the case in order to resolve jurisdiction, then the case may proceed. *Miranda*, 133 S.W.3d at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question, the court rules on jurisdiction as a matter of law. *Id.*

*Resendez v. Tex. Comm'n on Envtl. Quality*, 391 S.W.3d 312, 319–20 (Tex. App.—Austin 2012, pet. filed). Section 554.0035 of the Texas Government Code waives sovereign immunity when a public employee alleges a violation of the Act. TEX. GOV'T CODE ANN. § 554.0035.

The Act prohibits any state or local government from taking an adverse personnel action against a public employee who, in good faith, reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. *Id.* § 554.002(a). To establish a claim for retaliation under the Act, a claimant must prove the following elements: (1) the claimant was a public employee; (2) she acted in good faith in making a report; (3) the report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) the claimant suffered retaliation as a result of making the report. *Cnty. of Bexar v. Steward*, 139 S.W.3d 354, 357–58 (Tex. App.—San Antonio 2004, no pet.). As defined in the Act, a "law" is "a state or federal statute," "an ordinance of a local governmental entity," or "a rule adopted under a statute or ordinance." TEX. GOV'T CODE ANN. § 554.001(1) (West, Westlaw through 2013 3d C.S.). "To make a good faith report of a violation, the employee must believe that the reported conduct violated the law and that belief must be reasonable in light of the employee's training and experience." *City of S. Houston v. Rodriguez*, 425

5

S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex. 2013) (noting that "good faith" in context of Whistleblower Act contains both subjective and objective elements). "An appropriate law enforcement authority is a part of a state entity that the employee in good faith believes is authorized (1) to regulate under or to enforce the allegedly violated law, or (2) to investigate or prosecute a violation of criminal law." *Univ. of Houston v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013) (per curiam) (citing TEX. GOV'T CODE ANN. § 554.002(b)). Thus, a "reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority." *Tex. Dep't of Human Servs. v. Okoli*, No. 10-0567, 2014 WL 4116807, at *3 (Tex. Aug. 22, 2014). The Texas Supreme Court has repeatedly held that "reports up the chain of command are insufficient to trigger the Act's protections." *Id.* (citing, *Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443, 445–46 (Tex. 2013) (per curiam); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (per curiam); *Barth*, 403 S.W.3d at 855–58; *Tex. A & M Univ.-Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013) (per curiam); *Gentilello*, 398 S.W.3d at 689; *Lueck*, 290 S.W.3d at 885–86).

## III. DISCUSSION

We begin by examining Carter's allegations in her pleadings. In her First Amended Petition, Carter alleged:

> At some point shortly after beginning [her position at TDMV], she began to notice irregularities in the organizations' [sic] records and circumvention of open bidding process and other laws affecting governmental business operations. After Plaintiff discovered abnormalities in the "Think Street" files and other projects such as the "My Plates" personalized license plates

6

program concerning payments to media providers and other contractors, Plaintiff brought this to the attention of the Comptroller and the legal department.

Carter's pleadings do not specify the alleged "irregularities" or "abnormalities" and do not identify any violation of law. In her response to TDMV's plea and motion, Carter made the same vague allegations: that she noticed "irregularities," "abnormalities," and "other practices she perceived to be violations of law." In her response, Carter cited several statements included in her affidavit. The trial court, however, struck the affidavit passages that she cited. Carter also stated in her response that "she brought her concerns to the attention of the Comptroller" and that the Comptroller's office was an appropriate law enforcement authority to investigate her allegations.

In her deposition testimony, Carter identified several emails for which she alleged that she was subjected to retaliation by TDMV. First, Carter identified a January 11, 2011 email that she sent to Chambers. In the email, Carter requested permission to relocate because her office cubicle was next to a hearing-impaired co-worker whose loud-ringing phone was disruptive. Carter attached a 2001 report from the State Auditor's Office to persuade Chambers that her position was comparable to a supervisory position, and that she was therefore eligible to move to a cubicle that was reserved for supervisory personnel. Second, Carter identified a January 24, 2011 email that she sent to Lea Burnett, an Assistant General Counsel at TDMV. In the email, Carter complained that some of the TDMV project managers—in particular, the contract manager assigned to the "Think Street" contract—lacked the skills required for managing contracts. The email stated that, based on Carter's limited review of the file, the file was "not a file TXDMV would use as a model as we move forward." At her deposition, Carter stated that the manager of the "ThinkStreet" contract did not have any of the certifications required by

7

TDMV rules to monitor a contract. Carter admitted that the email did not report that TDMV was breaking the law. Third, Carter identified a second email to Burnett, also sent on January 24, 2011. The subject line of the second Burnett email is "HUB Coordinator Position & Best Practice Guidelines." In the email, Carter stated that her position, HUB Coordinator, "should not report directly to the Procurement Director due to the conflict of interest that arises when reporting HUB compliance and compiling data from the purchasing staff." Carter attached the same 2001 report that she had earlier sent to Chambers to establish that it was "a conflict" for her position to be supervised by Chambers. Carter also stated in the email that she was sometimes unable to achieve her goals because she was "overruled" by Chambers. In her deposition testimony, Carter explained that Chambers sometimes excluded her from meetings.

In her deposition testimony, Carter stated that on January 28, 2011, the day after she was notified of her dismissal, she telephoned the State Auditor's Office to report what she believed to be mismanagement of certain contracts and suspected fraudulent activity. Carter identified the January 28, 2011 State Auditor's Office report summarizing the allegations she made during the call. Carter verified that she had not contacted the State Auditor's Office prior to the January 28 call. Also on January 28, 2011, Carter sent an email to Elton Brock, Carter's former manager and the manager of Statewide Procurement and Contracts at the office of the Texas Comptroller of Public Accounts. In the email, Carter told Brock that she had been terminated. She stated that Chambers had given her "superior" evaluations until she sent the two January 24, 2011 emails to Burnett. In her deposition testimony, Carter stated that she sent Brock another email on January 28 regarding Carter's audit of the ThinkStreet contract, but admitted that she does not have that email. She admitted that she did not tell anyone at TDMV that she

8

had emailed Brock about the ThinkStreet contract and, similarly, did not tell anyone at TDMV that she had made a report to the State Auditor's office.

On February 7, 2011, Carter sent an email to Paul Gibson, the manager of the HUB program, asserting that Chambers had improperly authorized the purchase of office supplies at an Office Depot. When Carter was asked whether she had any documentary evidence that she complained to anyone at the Comptroller's office prior to her termination, she stated that she sent emails to the Comptroller's office prior to her termination, but did not have those emails in her possession.[5]

In summary, Carter has identified the two January 24, 2011 emails to Burnett: one, complaining that contract managers lacked contract management skills, and the second, complaining that her position should not be supervised by Chambers. Carter also claims that she sent emails to the Comptroller's office complaining of suspected improprieties prior to her termination, but admits that she does not have copies of those emails. We also note that Carter's January 28, 2011 phone call to the State Auditor's Office came after she was notified of her termination.

TDMV asserts that Carter has failed to sufficiently show that: (1) she made a good faith report of a violation of law by her employing governmental entity or another public employee; or (2) she made the report to an appropriate law-enforcement authority. We agree with TDMV's first assertion. *See Rodriguez*, 425 S.W.3d at 631; *Resendez*, 391 S.W.3d at 321.

It is undisputed that Chambers hand-delivered the notice of termination to Carter

---

[5] In her deposition, Carter admitted that she sent the email to Paul Gibson after she was terminated. However, in five single-spaced pages of "Corrections" to her deposition testimony, she changed her answer to reflect that the February 7 email was a "follow-up email" to several other emails that she sent prior to her termination.

on January 27, 2011. But Carter first contacted Brock at the Comptroller's office on January 28, the day after she was notified of her termination. Carter claimed to have sent Brock a second email regarding the ThinkStreet contract also on January 28, although no such email appears in the record. Rather, the record shows that Carter first contacted the State Auditor's Office hotline on January 28, 2011. Moreover, Carter testified that she did not tell anyone at TDMV that she was sending an email to Brock about the ThinkStreet contract or that she was going to file a report at the State Auditor's Office. Carter's February 7, 2011 email to Gibson references an earlier email sent "a week ago," although in the corrections to her deposition testimony, she corrected her response to reflect that the February 7 email was a follow-up to several earlier emails that were sent "prior to [her] termination."[6] Again, no such emails are included in the record. We need not consider whether any of these emails or calls constituted a good faith report of a violation of law, however, because Carter could not have been terminated on January 27, 2011 in retaliation for conduct that occurred *after* that date. *See Harris Cnty. v. Vernagallo*, 181 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (noting that to show causation in a whistleblower suit, "the complainant must show that the person who took the adverse employment action knew of the employee's report of illegal conduct").

In her deposition testimony, Carter identified the two January 24, 2011 emails to

---

[6] The February 7, 2011 email states that Carter is "following up on the email I sent a week ago regarding the legitimacy of the HUB vendors located in Waco, Texas." In the email, Carter complained that Chambers authorized certain vendors to "sign a personal account with Office Depot for all their needs." Carter alleged that "[t]his violates the p-card policies since a contract exist [sic] on SmartBuy." She further stated that she "informed David [Chambers] that [she] was sending this information to CPA to do an on-sight [sic] audit or see if a recent one was on file, because if this information is true and correct, CPA may want to decertify those companies." Even if we assume that Carter told Chambers that she was reporting the suspected policy violation to the Comptroller's office, we cannot conclude that Carter in good faith reported a violation of law. Alleged violations of an agency's internal procedures and policies will not support a claim under the Act. *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied); *see Tex. Youth Comm'n v. Bollinger*, No. 07-11-00152-CV, 2013 WL 2390101, at *2 (Tex. App.—Amarillo May 28, 2013, pet. denied) (mem. op.).

Burnett as complaints for which she alleged she suffered retaliation by TDMV. As noted, the first email complains that she should not be supervised by Chambers and the second complains about contract managers lacking the required skills. Neither purports to report a violation of law. *See* TEX. GOV'T CODE ANN. § 554.002(a). In her response to TDMV's plea to the jurisdiction and motion for summary judgment, however, Carter stated that she was not relying on her complaints to TDMV personnel, but was instead relying on her claim that she contacted the Comptroller's office prior to her termination. In support of her assertion that she had provided "ample evidence to show that she made external complaints regarding a good faith belief of TXDMV's illegal activities," Carter cited her own affidavit, in which she asserted, among other things, that: (1) she contacted the Comptroller's office questioning Chambers' use of the "P-Card" to purchase office supplies; (2) some of Chambers's directives were not in compliance with Comptroller's "rules and policies"; (3) "[i]llegal (pre-payments) violation of Prompt Payment Law"; (4) "[o]ver-billing for commission by ThinkStreet—Fraud"; (5) "[u]nauthorized to contract media contracts [sic]"; (6) '[a]bused [sic] of P-Card by trying to set up accounts with Office Depo [sic] etc."; (7) "[t]ransferring monies from different accounts to cover million [sic] of dollars pre-payments"; (8) "[a]warding of contracts to vendors that were recommended by agency employee. Violation of DIR vendor pre-approved contracts"; (9) "[n]on-compliance of placing the HUB Coordinator position on the Flow Chart as equal to the Director Position"; (10) "MyPlate contract invoices were being approved accepted by the vendor and the vendor was paying the state a percentage of the selling of license plates. The state supposes [sic] to have been paying the vendor . . . not the other way around"; (11) "[l]ack of oversight, monitoring, auditing, illegal activities, pre-payment violations"; (12) "[n]o checks and balances"; (13) "[m]isappropriation of taxpayers' dollars"; and (14)

11

"[d]id not have the appropriate staff overseeing contracts with the required certifications." These allegations primarily allege mismanagement. In this laundry list of allegations, the only statute mentioned is the "Prompt Payment Law." Section 2251.030 of the Prompt Payment Act addresses when a governmental agency may negotiate an early payment discount with a vendor. *See* TEX. GOV'T CODE ANN. § 2251.030 (West, Westlaw through 2013 3d C.S.). Carter has neither identified nor provided any evidence that any of TDMV's alleged improprieties constituted a violation of this law.

"An employee is not required to identify in his report the statute, ordinance, or rule he asserts was violated." *Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 327 (Tex. App.—Dallas 2012, no pet.) (citing *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied); *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied)). "However, at some point during the litigation, the employee–plaintiff must make that identification." *Id.* Here, TDMV asserted in its plea to the jurisdiction that Carter failed to report a violation of law.[7] We agree. Whether Carter's reports showed a violation of law is a question of law. *See id.* at 326. Carter's allegations in her affidavit referencing "illegal activities," "pre-payment violations," and "misappropriation" are conclusory because she provided no facts to support the conclusions. "Conclusory statements are not competent evidence in a plea to the jurisdiction proceeding." *Id.* We conclude that Carter's petition did not allege a violation of law and the evidence failed to raise a fact question of whether she reported a violation of law. Carter therefore failed to state a valid claim under the Act and cannot invoke section 554.0035's limited waiver of immunity. *See* TEX. GOV'T CODE ANN. §

---

[7] Specifically, TDMV asserted in its plea to the jurisdiction: "In fact, to date, Plaintiff has wholly failed to identify any state or federal statute, or a rule duly adopted thereunder, that she contends would have been violated by the conduct that she allegedly reported prior to notification of her dismissal."

554.0035. The trial court did not err in granting TDMV's plea to the jurisdiction. *See Resendez*, 391 S.W.3d at 320.

Carter also argues that she should have been given an opportunity to amend her pleadings before her claims were dismissed. We disagree. Carter's pleadings affirmatively negate jurisdiction because she failed to identify to the trial court the law she believed was violated. *See Lueck*, 290 S.W.3d at 884–85; *Wilson*, 376 S.W.3d at 327–38. Carter's pleadings failed to allege a violation of law and the evidence presented to the trial court failed to create a fact question regarding whether she reported a violation of law. Accordingly, the trial court did not err in determining that it lacked jurisdiction over Carter's Whistleblower claim and dismissing the case because she did not report a violation of law. *See Wilson*, 376 S.W.3d at 327–38; *Lueck*, 290 S.W.3d at 886. We overrule Carter's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
16th day of Oct., 2014.

13