# IN THE SUPREME COURT OF TEXAS

══════════

No. 10-0567

══════════

Texas Department of Human Services, Petitioner,

v.

Oliver Okoli, Respondent

══════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of Texas
══════════════════════════════════════════════════

**Argued October 9, 2013**

Justice Brown delivered the opinion of the Court, in which Chief Justice Hecht, Justice Green, Justice Johnson, and Justice Guzman joined.

Justice Devine filed a dissenting opinion, in which Justice Willett and Justice Lehrmann joined.

Justice Boyd did not participate in the decision.

The Texas Whistleblower Act protects public employees who in good faith report violations of law to an appropriate law-enforcement authority. Tex. Gov't Code § 554.002(a). In this case, an employee reported wrongdoing to his supervisor, who was required to forward the report to a part of the agency with outward-looking law-enforcement authority. We find this case indistinguishable from our previous cases interpreting the Act that hold reports of wrongdoing to a supervisor are not

good-faith reports to an appropriate law-enforcement authority. Therefore, we reverse the court of appeals and hold the trial court lacks subject-matter jurisdiction over this whistleblower claim.

I

Oliver Okoli was an employee of the Texas Department of Human Services (TDHS) from 1990 to 1998. At the time, TDHS was charged with administering welfare programs, such as the issuance of Medicaid benefits and food stamps. Okoli's duties included interviewing clients, determining benefits, explaining program benefits and requirements, and evaluating clients' eligibility for continuing services. Okoli was promoted on at least a couple of occasions, but was also cited several times, as far back as 1994, for faulty documentation.

According to Okoli, TDHS trained its employees in how to report illegal acts by other employees. Okoli asserts that TDHS instructed him to report such acts first to an immediate supervisor, and then up the chain of command if the first supervisor's response was unsatisfactory. This procedure was re-affirmed for Okoli when he reported a supervisor's harassment to the regional director and was told to go back and start with his immediate supervisor. In addition to the training Okoli received, TDHS also circulated an internal memorandum in 1994 entitled "Work Rule Violations." TDHS required Okoli to sign the memorandum, acknowledging that he had received it and discussed it with his supervisor.

The memorandum provided that TDHS employees are prohibited from making false statements relating to employment and job assignments, including "falsifying file dates on applications" and "intentionally making a false alteration of dates or codes on [TDHS] forms." The memorandum further provided that any employee or supervisor found to have violated, encouraged

a violation of, or failed to report such a violation would "be subject to disciplinary action up to and including dismissal." Additionally, the memorandum provided that for any violation amounting to a crime under the Penal Code, "a referral to [TDHS's Office of Inspector General] will be made for possible prosecution." TDHS's Office of Inspector General (OIG) is responsible "for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state," and for "enforcement of state law relating to the provision of those services." TEX. GOV'T CODE § 531.102(a). In the memorandum, Okoli was not given any instruction on whether he should or should not report unlawful conduct directly to the OIG.

In 1997, Okoli was assigned to a new supervisor. According to Okoli, this new supervisor often falsified dates on TDHS benefits forms to avoid delinquencies. When Okoli first complained of the fraudulent activity to the supervisor herself, she allegedly disciplined him, placing him on a "three-month corrective action plan." Okoli then reported the wrongdoing to the supervisor's supervisor. After receiving another unsatisfactory response, Okoli reported the "illegalities" even higher up the chain of command, to the Lead Program Manager. After following this course, Okoli was terminated. Okoli never reported the fraudulent activity to anyone within the OIG. Okoli pursued an administrative-grievance procedure to contest the termination, but the termination decision was sustained.

Okoli then sued TDHS under the Texas Whistleblower Act, alleging that he was terminated for reporting that his supervisor falsified dates and documents. In response, TDHS filed a plea to the jurisdiction, claiming the trial court lacked jurisdiction because Okoli failed to make a good-faith

3

report of a violation of law to an appropriate law-enforcement authority. *See* TEX. GOV'T CODE § 554.0035 ("Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."). The trial court denied TDHS's plea to the jurisdiction, and TDHS appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (permitting appeal from an interlocutory order that denies a plea to the jurisdiction by a governmental unit). The court of appeals affirmed, holding that the whistleblower statute did not require Okoli to raise a fact issue on the merits of the claim in order to show jurisdiction. *See Tex. Dep't of Human Servs. v. Okoli*, 263 S.W.3d 275, 281 (Tex. App.—Houston [1st Dist.] 2007, pet. granted). We reversed the court of appeals' decision and remanded the case for consideration under this Court's holding in *State v. Lueck*, 290 S.W.3d 876, 883 (Tex. 2009). *Tex. Dep't of Health & Human Servs. v. Okoli*, 295 S.W.3d 667, 668 (Tex. 2009) (per curiam).

On remand, the court of appeals held that because Okoli testified he was required by TDHS policy to report "up the chain of command," the supervisors were appropriate law-enforcement authorities within TDHS, and, alternatively, Okoli had a good-faith belief that he was reporting to appropriate law-enforcement authorities. *Tex. Dep't of Human Servs. v. Okoli*, 317 S.W.3d 800, 809–10 (Tex. App.—Houston [1st Dist.] 2010, pet. granted). The court of appeals again affirmed the trial court's order, and TDHS filed a second petition for review with this Court. Here, we consider whether Okoli made a report "to an appropriate law[-]enforcement authority," as defined by the Whistleblower Act, when he followed department policy and reported to his supervisors up the chain of command. TEX. GOV'T CODE § 554.002(b).

4

II

The Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law[-]enforcement authority." TEX. GOV'T CODE § 554.002(a). In 1995, the Legislature amended the statute to define "appropriate law[-]enforcement authority":

> [A] report is made to an appropriate law[-]enforcement authority if the authority is part of a state or local governmental entity or the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE § 554.002(b).

This Court first interpreted what it means to be an "appropriate law[-]enforcement authority" under the amended statute in *Texas Department of Transportation v. Needham*, 82 S.W.3d 314 (Tex. 2002). To satisfy this requirement, a plaintiff seeking the Act's protection must prove that the report was made to an appropriate law-enforcement authority, or that the employee had a good-faith belief that it was. *Id.* at 320. An employee's belief is in good faith if: (1) the employee believed the governmental entity qualified, and (2) the employee's belief was reasonable in light of the employee's training and experience. *Id.* at 321. While the first element is subjective, the second element is an objective one: the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority. *Id.* at 320–21. Whether an employee has a good-faith belief that the entity is an appropriate law-

5

enforcement authority "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex. 2013) (emphasis in original).

Since *Needham*, this Court has spoken several more times to what constitutes a good-faith report to an appropriate law-enforcement authority. In each instance, we have held that reports up the chain of command are insufficient to trigger the Act's protections. *See Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443, 445–46 (Tex. 2013) (per curiam); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (per curiam); *Univ. of Houston v. Barth*, 403 S.W.3d 851, 855–58 (Tex. 2013) (per curiam); *Tex. A & M Univ.—Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013) (per curiam); *Gentilello*, 398 S.W.3d at 689; *Lueck*, 290 S.W.3d at 885–86. In *Gentilello*, we noted that we had consistently declined on previous occasions "to remove the objective element and protect internal reports to workplace supervisors who lacked the Act's specified powers." 398 S.W.3d at 683. The facts of Okoli's case do not merit a departure from this precedent.

III

The 1994 memorandum regarding how TDHS employees should report wrongdoing includes a purported assurance that violations of the Penal Code would be reported to OIG. TDHS does not dispute that its OIG is an appropriate law-enforcement authority under the Whistleblower Act, as it is charged with investigating and enforcing violations of law or fraud: "The commission's office of inspector general is responsible for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state . . . ." TEX. GOV'T CODE § 531.102(a). However, because Okoli did not make

6

a report directly to the OIG, we must consider whether the reports to Okoli's supervisors—who work to administer TDHS programs—satisfy the Act's requirements.

When an employee reports wrongdoing internally with the knowledge that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting "*to* an appropriate law[-]enforcement authority." TEX. GOV'T CODE § 554.002 (emphasis added). We have made this clear in previous decisions interpreting the "appropriate law[-]enforcement authority" requirement. In both *Needham* and *Lueck*, for instance, we denied Whistleblower Act protection to Texas Department of Transportation (TxDOT) employees who reported violations of law to supervisors within the department because those supervisors lacked appropriate law-enforcement authority. *Lueck*, 290 S.W.3d at 885–86 (holding the head of a division within TxDOT could not regulate or enforce federal traffic data-collection regulations); *Needham*, 82 S.W.3d at 320–21 (holding TxDOT could only internally discipline an employee who violated drunk-driving laws).

Importantly, in both *Needham* and *Lueck*, the whistleblowers had been made aware that their supervisors lacked law-enforcement authority. In *Lueck*, an e-mail revealed that the whistleblower knew his supervisor would have to refer the violation elsewhere. We held that this conclusively established that the employee could not have formed a good-faith belief that his supervisor was an appropriate law-enforcement authority. *Lueck*, 290 S.W.3d at 885–86; *see also Needham*, 82 S.W.3d at 321 (holding that employee's participation in TxDOT's internal disciplinary process was insufficient to support finding of good faith belief that he reported to proper authority).

7

In this case, for Okoli's reports of wrongdoing to have reached an appropriate law-enforcement authority, Okoli's supervisors would have had to forward them to OIG for prosecution. Further, like the e-mail in *Lueck*, the 1994 memorandum in this case spells out for Okoli that his supervisor would have to refer his report elsewhere. While the TDHS memo requires employees to report all work-rule violations, it also informs employees that if the violations constitute a violation of the Penal Code, "a referral to OIG will be made for possible prosecution." Like the employees in *Needham* and *Lueck*, Okoli did not report to an appropriate law-enforcement authority, nor could he have had a good-faith belief that he did so.

We reaffirmed our *Lueck* holding in *Barth* and *Gentilello*. *See Barth*, 403 S.W.3d at 857–58; *Gentilello*, 398 S.W.3d at 687. *Barth*, which we decided less than a year ago, is particularly analogous to this case. In *Barth*, a university professor reported violations of law by his college's dean to the university's general counsel, chief financial officer, internal auditor, and associate provost. 403 S.W.3d at 853. We held that because "none of the four people that Barth reported to regarding alleged violations of the Penal Code . . . could have investigated or prosecuted criminal law violations against third parties," he failed to satisfy section 554.002(b) of the Texas Government Code. *Id.* at 857–58. Barth also reported the violations to the university's police department, but not until after alleged retaliatory acts against him had already occurred. *Id.* at 857. We pointed out that Barth's report to the police may have been sufficient had it preceded the retaliatory action. *Id.*

In *Gentilello,* we held that a medical-school faculty member who oversaw internal compliance with federal regulations did not have "law-enforcement authority status" for reports of violations of federal laws. 398 S.W.3d at 686–87 ("A supervisor looking into and addressing

8

possible noncompliance in-house bears little resemblance to a law-enforcement official formally investigating or prosecuting the noncompliance on behalf of the public, or a regulatory authority charged with promulgating or enforcing regulations applicable to third parties generally."). In that case, the whistleblower acknowledged that the faculty member had only inward-looking authority and would have to refer suspected illegality "to whoever is in charge of enforcing the law." *Id.* at 688.

In spite of this line of authority, Okoli urges us to find his up-the-chain-of-command report satisfies the Act. This case can be distinguished from *Barth* and the others, Okoli insists, because TDHS had developed a process for collecting criminal reports within the agency: employees were trained to refer wrongdoing to department supervisors up the chain of command, who would then forward possible criminal violations to the OIG.

As to the training Okoli received, we have rejected the notion that a departmental policy requiring employees to report wrongdoing to their supervisors is sufficient to form a good-faith belief. The plaintiffs in *Barth*, *Gentilello*, and *Needham* were complying with similar instructions when they made their reports. *See Barth*, 403 S.W.3d at 857; *Gentilello*, 398 S.W.3d at 688; *Needham*, 82 S.W.3d at 314.

We have rejected this argument even when those who receive the report are also administratively obligated to report the alleged violations to an appropriate law-enforcement authority. We held that Barth's reports were insufficient, even though he argued that in reporting the violations as he did, he was complying with the university's internal administrative policy, and that university policy further required all the administrators who received such reports to forward them

9

to the university police. *See Barth*, 403 S.W.3d at 857–58. Similarly, we did not find a good-faith belief that the report made in *Needham* was made to an appropriate law-enforcement authority when the plaintiff there believed it would be forwarded to another entity that could prosecute the alleged violation. 82 S.W.3d at 321. Because these arguments are directly analogous to those Okoli makes in this case, we again hold that a departmental process that channels reports of wrongdoing to appropriate law-enforcement authorities does not make every report one that is "*to* an appropriate law[-]enforcement authority." *See* TEX. GOV'T CODE § 554.002(b) (emphasis added).

The fact that the OIG is an internal division of TDHS does not change the analysis. There is no reason why a TDHS supervisor is any more likely to pass on a report to OIG than the university administrators in *Gentilello* were to pass on reports of violations of federal law to federal authorities, or the administrators in *Barth* were to pass on reports of state-law offenses to the police.

In so holding, however, we decline, as we did in *Gentilello*, to say that no internal report could ever merit protection under the Act. *See* 398 S.W.3d at 686. In *Gentilello*, we posited this hypothetical:

> We do not hold that a Whistleblower Act report can *never* be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large. UTSW concedes in its briefing that "some Whistleblower Act reports may be made internally—for instance, a report of a violation of the Texas Penal Code to a supervisor who is also a policeman and, as such, is authorized to investigate violations of criminal law." But here, as in *Needham* and *Lueck*, the supervisor lacked any such power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally.

*Id.* (emphasis in original).

10

The whistleblower in the *Gentilello* hypothetical is reporting a violation of law to a police officer. Whether a member of the narcotics division or the internal-affairs division, a police officer is authorized to investigate violations of law and to cite or arrest persons suspected of committing such violations. Okoli's supervisors, like the supervisors and administrators in *Gentilello*, *Moreno*, *Barth*, *Needham*, and *Lueck*, have no such authority.

To satisfy the Act's requirements, a report must be made to (1) an individual person who possesses the law-enforcement powers specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers. This would include someone within an OIG or even an OIG within the same agency as the whistleblower, so long as the OIG has outward-looking law-enforcement authority. It would not include someone, like Okoli's supervisors, who does not work within a governmental arm so charged and would have to refer the report of wrongdoing to such an arm.

\* \* \*

Because Okoli neither reported the alleged violations he witnessed to an appropriate law-enforcement authority nor in good faith could have believed he had, he is not entitled to the protections of the Whistleblower Act. TEX. GOV'T CODE § 554.002(a). Therefore, we reverse the court of appeals' judgment and dismiss Okoli's claims for lack of jurisdiction.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: August 22, 2014

11