# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-13-00189-CV

**Hunt County Community Supervision and Corrections Department, Appellant**

**v.**

**Christina Gaston, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
## NO. D-1-GN-11-003857, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

The dissenting opinion dated August 6, 2014, is withdrawn, and this opinion is substituted in its place.

According to the majority, a public employee who reports alleged governmental malfeasance to a state or local governmental entity with actual authority to investigate that conduct is not protected by the Whistleblower Act unless the employee knows, at the time the report is made, the precise method by which the governmental entity could exercise its investigative authority. *See* Slip op. at 35-37. In reaching this conclusion, the majority has applied a degree of strictness that is nowhere found in the statutory language and is, in my opinion, antithetical to the Whistleblower Act's purpose. In addition, the majority implies—but does not expressly hold—that a district court

does not constitute either a state or local governmental entity, a conclusion that would have the effect of depriving all district court employees of the Whistleblower Act's anti-retaliation protection. *See id.* at 18-19 n.51 & 37 n.114. Accordingly, I respectfully dissent.

Christina Gaston's employment was terminated by the Hunt County Community Supervision and Corrections Department (HCCSCD) after she reported to a state district court judge—the Hon. Stephen Tittle—that she believed HCCSCD employees had engaged in activities that violated state law. Gaston testified that she reported the activity to Judge Tittle because she believed he could "put a stop to it and . . . investigate it and see if it was legal or not." Gaston's belief that Judge Tittle could investigate the allegations was subjectively and objectively reasonable because, under the court-of-inquiry process governed by Chapter 52 of the Texas Code of Criminal Procedure, district court judges possess investigative authority distinct from both their traditional adjudicatory and remedial powers and their internal authority to regulate and enforce compliance as supervisors. *See* Tex. Code Crim. Proc. arts. 52.01-.09 (governing court-of-inquiry proceedings); *University of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 682-88 (Tex. 2013) (as used in Whistleblower Act, "appropriate law enforcement authority" connotes external authority to regulate, enforce, investigate, or prosecute violations of law against third parties outside of employing entity itself rather than purely internal authority). That an employer may lack investigative authority in one capacity does not prevent it from having such authority in a different capacity. *See Gentilello*, 398 S.W.3d at 686 (recognizing that employer may not be "appropriate law enforcement authority" in supervisory capacity but might independently satisfy that definition due to authority employer possesses in another capacity); *Leach v. Texas Tech Univ.*, 335 S.W.3d 386, 395-96, 397 n.5 (Tex.

2

App.—Amarillo 2011, pet. denied) (holding that petition instituting civil lawsuit did not constitute "report" under Whistleblower Act because judiciary's role vis-à-vis lawsuit is adjudicatory and remedial, not investigative or regulatory, but acknowledging that some judges may possess authority beyond mere adjudication that might independently satisfy statutory definition of "appropriate law enforcement authority").

The majority nonetheless concludes that Gaston's claim under the Whistleblower Act fails as a matter of law because Gaston lacked a good-faith belief that a state district court judge could "investigate or prosecute a violation of criminal law." *See* Slip op. at 35-37. Moreover, even though not necessary to the majority's disposition, the opinion goes further by suggesting that district courts do not constitute either a state or a local governmental entity within the meaning of the Whistleblower Act. *See* Slip op. at 18-19 n.51 & 37 n.114. Such a holding would categorically exclude district court employees from protection under the Whistleblower Act. In my view, the majority's analysis of these issues relies on an unreasonable construction of the statute and fine-spun distinctions that are incompatible with the Act's legislative purpose. *See, e.g.*, *University of Houston v. Barth*, 178 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Because the [Whistleblower Act] is remedial in nature, we construe its provisions liberally to effectuate its legislative purpose—to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.").

I would hold that (1) there is evidence that Gaston honestly believed that Judge Tittle could investigate her allegations of criminal misconduct; (2) it is objectively reasonable to believe that district court judges are authorized to investigate allegations of criminal misconduct given the

3

investigative authority conferred on them under Chapter 52 of the Code of Criminal Procedure; and (3) district courts are state or local governmental entities (and as a practical matter, it is irrelevant which one). I therefore cannot join in the majority's opinion and judgment.

## DISCUSSION

The Whistleblower Act forbids state and local governmental entities from taking adverse employment action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002(a). A "public employee" is defined by the Act as "an employee or appointed officer . . . who is paid to perform services for a state or local governmental entity." *Id.* § 554.001(4). "[A] report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity . . . that the employee in good faith believes is authorized to . . . investigate or prosecute a violation of criminal law." *Id.* § 554.002(b).

As used in the Whistleblower Act, the term "appropriate law enforcement entity" requires more than being empowered to discipline internally or to refer suspected violations elsewhere. *See Gentilello*, 398 S.W.3d at 682. Instead, consistent with the Act's "undeniable focus on law enforcement," *id.*, the Texas Supreme Court has identified various attributes that are characteristic of entities possessing law-enforcement authority within the meaning of the Whistleblower Act:

- "free-standing regulatory, enforcement, or crime-fighting authority";
- authority to "make the law or pursue those who break the law";

4

- "authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or . . . authority to promulgate regulations governing the conduct of such third parties";

- "power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally";

- "authorities that issue legal directives, not authorities that follow them"; and

- "a law-enforcement official formally investigating or prosecuting [legal] noncompliance on behalf of the public, or a regulatory authority charged with promulgating or enforcing regulations applicable to third parties generally."

*Id.* at 682, 686-87; *see also* Slip op. at 26. It has also been said that the phrase "appropriate law enforcement authority" in the Whistleblower Act refers to an entity "charged with the ability to enforce or regulate the laws purportedly breached or [to] investigate the breach of those laws," and that such a description evokes "visions of police, administrative agencies, district attorneys, the attorney general, and like bodies commonly associated with investigating and enforcing the law." *Leach*, 335 S.W.3d at 396.

The foregoing attributes are distinct from those embodied in the traditional role of the judiciary, which is to use the power of adjudication to apply the law and, if appropriate, provide a remedy. Those attributes are also distinct from a judge's role as a supervisor. Thus, I have no quarrel with the majority's conclusion that trial courts do not meet the statutory definition of "an appropriate law enforcement authority" when only their *adjudicative* or *supervisory* capacities are implicated. *See* Slip op. at 22-24 & 31; *see also Gentilello*, 398 S.W.3d at 684 (holding that public employee did not have objectively reasonable belief that supervisor was "appropriate law enforcement authority" because "[g]iven his training and expertise, he should have known that his

5

supervisor's *purely internal authority* was not law enforcement but law compliance" (emphasis added)); *Leach*, 335 S.W.3d at 395-96 (filing civil lawsuit is not "report" under Whistleblower Act because lawsuits invoke court's adjudicatory powers, which do not include power to investigate or regulate except in general sense through adjudication).

However, state district court judges are not limited to acting in those capacities. By virtue of the court-of-inquiry powers conferred by Chapter 52 of the Code of Criminal Procedure, district court judges are unambiguously permitted to step out of their adjudicatory roles and are expressly authorized to investigate—and to a limited degree prosecute—alleged violations of criminal law.[1] *See* Tex. Code Crim. Proc. arts. 52.01-.09.

Chapter 52 empowers district court judges to:

(1) initiate investigative proceedings into unlawful conduct by requesting that the presiding judge of the administrative district appoint a district court judge to commence a court of inquiry and by executing a sworn affidavit establishing probable cause to believe that a specific violation of the law has occurred;

(2) preside over a court of inquiry and conduct a fact-finding investigation into allegations of criminal misconduct, including summoning witnesses and hearing testimony; and

---

[1]  The terms "investigate" and "prosecute" are not defined in the Whistleblower Act.  In common parlance, "investigate" means "[t]o inquire into (a matter) systematically . . . [t]o make an official inquiry."  *Black's Law Dictionary* 953 (10th ed. 2009); *see American Heritage Dictionary of the English Language* 689 (1973) (defining "investigate" and "investigation" to include making an inquiry).  "Prosecute" means "[t]o commence and carry out (a legal action) . . . [t]o institute and pursue a criminal action against (a person) . . . [t]o engage in; carry on."  *Black's Law Dictionary* 1416 (10th ed. 2009); *see American Heritage Dictionary of the English Language* 1050 (1973) (defining term to include "[t]o initiate legal or criminal court action against . . . [t]o seek to obtain or enforce by legal action").

(3) issue an arrest warrant to facilitate further prosecution if there is sufficient evidence that an offense has been committed.

*See id.* arts. 52.01, .08. These activities are substantially similar to the basic investigative powers characteristic of law-enforcement authorities in non-judicial branches of the government, such as police officers and district attorneys. They are also virtually indistinguishable from the attributes the Texas Supreme Court has recognized as being characteristic of an "appropriate law enforcement authority." *See Gentilello*, 398 S.W.3d at 682, 686-87. Thus, under Chapter 52, district court judges possess authority beyond adjudication and internal disciplinary authority: acting in the capacity of "magistrate," they have the power to investigate criminal breaches of the law by the citizenry at large. *Cf. In re Thompson*, 330 S.W.3d 411, 415 (Tex. App.—Austin 2010, orig. proceeding) (holding that district judge had distinct powers when acting in capacity as "district judge" as compared to acting in capacity as "magistrate"). For purposes of the Whistleblower Act, the power to "investigate" while acting in the capacity as a magistrate makes district court judges functional equivalents of typical law-enforcement entities in terms of their fundamental investigative authority as to allegations of criminal conduct.[2]

---

[2] There is nothing novel about the concept that governmental actors who wear more than one hat might independently satisfy the statutory definition of "appropriate law enforcement authority" in one capacity but not in another. In fact, such a scenario was expressly contemplated by the supreme court in *Gentilello*:

> We do not hold that a Whistleblower Act report can *never* be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large.

The majority discerns from supreme court precedent the "core notion" that an "appropriate law enforcement authority" is "an entity that is empowered to respond on behalf of the public to reported alleged 'violations of law' by taking action against whatever third parties may have committed the alleged wrongdoing." *See* Slip op. at 26. That, of course, is precisely what Chapter 52 authorizes district court judges to do. The court-of-inquiry process confers on district court judges external, free-standing authority to investigate allegations of criminal misconduct and, if such misconduct is shown, to pursue third-party criminal actors by issuing an arrest warrant. In accordance with the Whistleblower Act's plain language, a district court judge could therefore be "an appropriate law enforcement authority" to whom a "public employee" can "report" alleged violations of criminal law.

The majority reaches a contrary conclusion by importing extra-textual requirements, considering discrete portions of the court-of-inquiry process isolated from the statute as a whole, and characterizing a court-of-inquiry proceeding as an adjudicatory process because it involves a hearing at which witnesses are questioned rather than the typical law-enforcement image of a police officer conducting a witness interview. What derives from this analysis is the majority's conclusion that Gaston failed to meet her burden to plead and produce evidence that she had a "good-faith" belief

---

*University of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013); *accord Leach v. Texas Tech Univ.*, 335 S.W.3d 386, 397 n.5 (Tex. App.—Amarillo 2011, pet. denied) (making a similar observation, although otherwise concluding that civil lawsuit did not constitute "report" under Act because, within context of lawsuit, district court judge had authority only to adjudicate civil law violations alleged in lawsuit, not regulate or investigate); *see also* Slip op. at 23 (acknowledging that "[a] report recipient . . . could be 'part' of an entity possessing authority extending beyond merely ensuring internal compliance and independently satisfying the definition of 'appropriate law enforcement authority'").

that Judge Tittle was an "appropriate law enforcement authority." However, given that district court judges actually have the statutory authority to investigate allegations of criminal malfeasance by governmental actors (and anyone else for that matter), the majority's conclusion that there is no evidence that Gaston honestly and reasonably believed that Judge Tittle possessed the requisite investigative powers is without foundation. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002) (Whistleblower Act's good-faith requirement comes into play when employee is wrong about whether entity was "appropriate law enforcement authority"); *cf. Lastor v. City of Hearne*, 810 S.W.2d 742, 744 (Tex. App.—Waco 1991, writ denied) (emphasizing that "good faith" is issue only if employee is wrong about illegality of reported conduct).

As used in the Whistleblower Act, the "good faith" requirements in subsections (a) and (b) of section 554.002 have both subjective and objective components. *See Needham*, 82 S.W.3d at 320-21. As used in section 554.002(b), "good faith" means:

> (1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and

> (2) the employee's belief was reasonable in light of the employee's training and experience.

*Id.* at 321. The first element of the good-faith standard refers to "honesty in fact," while the second element ensures that the reporting employee's belief, even if incorrect, was objectively reasonable. *Id.* at 320.

The majority concludes that Gaston's whistleblower claim fails on both counts. First, the majority opines that "Gaston could not have met her burden to show a subjective good faith

9

belief that Judge Tittle was empowered to 'investigate . . . a violation of law'" because there is no allegation or evidence that she knew the precise method by which he could exercise his external law-enforcement authority—namely, the court-of-inquiry process. *See* Slip op. at 35 ("Gaston presented no allegation or evidence that she 'reported' the asserted 'violations of law' with the intent or belief that Judge Tittle would 'investigate' them through the court-of-inquiry process."). Second, the majority concludes that even if Gaston possessed a subjective belief of these facts, it would not be objectively reasonable to believe that district court judges possess authority to investigate criminal-law violations because a district judge who initiates a court of inquiry cannot also preside over it, *see* Tex. Code Crim. Proc. art. 52.01(b)(2), and because the majority contends that district court judges essentially function as adjudicators in the court-of-inquiry process, *see* Slip op. at 35-36.

With regard to evidence of subjective "good faith," there is no statutory requirement that an employee know the specific method by which a law-enforcement entity can investigate or prosecute a violation of criminal law. Nor is there any such requirement discernable from the interpretive case law. To the contrary, in construing the good-faith requirement in section 554.002(a), Texas appellate courts have consistently held that "[t]here is no requirement that an employee identify a specific law when making such report." *Texas Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied); *see also Texas Youth Comm'n v. Bollinger*, No. 07-11-00152-CV, 2013 WL 2390101, at *2 (Tex. App.—Amarillo May 28, 2013, pet. denied) (mem. op.); *Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 323 (Tex. App.—Dallas 2012, no pet.); *Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet. denied).

Although the cases cited above involve the "good faith" reporting requirement in subsection (a) of section 554.002, the same good-faith test applies to the "good faith" requirement in subsection (b): "[T]he same test applies to determine if a public employee in good faith believed the governmental entity to which he reported a violation of law was an appropriate law enforcement authority. Applying this test upholds the statutory construction principle that, when feasible, we should consistently interpret terms used throughout a statute." *Needham*, 82 S.W.3d at 320-21. If "good faith" does not require the employee to know the specific law violated when reporting suspected illegal activity, it cannot logically require knowing the specific source of the law-enforcement authority's investigative powers. It is therefore immaterial whether there is evidence that Gaston was subjectively aware that Judge Tittle derived his investigative authority from the court-of-inquiry process in Chapter 52. The relevant inquiry is whether there is an allegation, and at least some evidence, that Gaston honestly believed that a state district court judge has the authority to investigate allegations of criminal misconduct. *See id.* at 320 (even if employee made report to entity that was not actually "an appropriate law enforcement authority" for particular violation alleged, employee could still obtain protection under whistleblower statute if he had "good faith" belief); *cf. Lastor*, 810 S.W.2d at 744 (emphasizing that "good faith" is an issue only if employee is mistaken). For the limited purpose of our jurisdictional inquiry, the subjective "good faith" component is satisfied not only by the fact that Chapter 52 gives district court judges investigative authority—thus making them an appropriate law-enforcement authority under the Whistleblower Act—but also by Gaston's pleadings and testimony that she believed that Judge Tittle could "put a stop to [the activity she reported] and . . . investigate it and see if it was legal or not."

11

The majority further concludes that Gaston's belief that Judge Tittle had some investigative authority—even if honestly held—was not objectively reasonable because Chapter 52 does not, in their view, confer *enough* investigative authority to meet the statutory definition of "appropriate law enforcement authority." *See* Slip op. at 35-36 (concluding that any authority conferred under Chapter 52 is "not the sort" of "'free-standing . . . crime-fighting authority'" or power "'to investigate or prosecute criminal violations against third parties generally'" that is characteristic of "appropriate law enforcement authority"). In support of this conclusion, the majority opines that (1) the first judge in the court-of-inquiry process is only empowered to "refer suspected illegality to external entities" and thus does not have any authority to "investigate" within the meaning of the Whistleblower Act and (2) the court-of-inquiry process is essentially indistinguishable from an adjudicative proceeding. *See* Slip op. 35-36.

Although any district court judge can initiate or preside over a court of inquiry, the same judge cannot do both. Tex. Code Crim. Proc. art. 52.01(a), (b)(2). Therefore, although Judge Tittle could be appointed to conduct a court of inquiry that he did not initiate, the majority concludes that it was not objectively reasonable for Gaston to believe that he possessed authority to "investigate" her allegations because he could not have presided over a court of inquiry that he himself initiated. According to the majority, this places Judge Tittle in the role of merely referring allegations of criminal conduct to an "external entity" (i.e., another district court judge who would conduct the court of inquiry). The majority's analysis on this point is flawed for at least two reasons.

First, in determining whether a report was made to "an appropriate law enforcement authority," we must look at either the *entity* to which the report was made or to the

12

specific individual to whom it was made. *See, e.g.*, *Texas Dep't of Human Servs. v. Okoli*, 57 Tex. Sup. Ct. J. 1214, 2014 WL 4116807, at *5 (Tex. Aug. 22, 2014) ("To satisfy the Act's requirements, a report must be made to (1) an individual person who possesses the law-enforcement power specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers."); *Robertson Cnty. v. Wymola*, 17 S.W.3d 334, 340 & n.6 (Tex. App.—Austin 2000, pet. denied). The relevant inquiry, therefore, is whether either Judge Tittle personally or state district court judges are "authorized to . . . investigate or prosecute violations of criminal law." Tex. Gov't Code § 554.002(b)(2). Because Chapter 52 clearly confers such authority, district court judges possess the authority to investigate criminal allegations even if a particular judge would be precluded from presiding over a court of inquiry as to a particular allegation.

Moreover, even if the focus were on the individual, Chapter 52 gives Judge Tittle the authority to *initiate* a criminal investigation by requesting a court of inquiry even if he could not personally preside over the ensuing proceeding before a district court judge. The power to initiate an investigation is an integral part of the investigative process. A court of inquiry can neither begin nor proceed unless a district court judge requests it and files a probable-cause affidavit. Tex. Code Crim. Proc. art. 52.01(a), (b) (district court judge may only request commencement of court of inquiry after "enter[ing] into the minutes of his court a sworn affidavit stating the substantial facts establishing probable cause that a specific offense has been committed against the laws of this state"). Even without liberally construing the Whistleblower Act to effectuate its purpose, the power to initiate a court of inquiry is part and parcel of the court-of-inquiry process and is, in my opinion,

13

sufficient to meet the statutory requirement that "an appropriate law enforcement authority" be "authorized to . . . investigate . . . a violation of criminal law." To the extent the majority holds otherwise, it does so by erecting a highly formalistic barrier to a statutory remedy that we are admonished to construe broadly. Accordingly, I would hold that Judge Tittle is "an individual person who possesses the law-enforcement powers specified under the Act." *See Okoli*, 2014 WL 4116807, at *5.

I also disagree with the court's suggestion that the court-of-inquiry process is materially indistinct from a criminal trial. The role district court judges play in the court-of-inquiry process bears no resemblance to the role they play in adjudicating a criminal complaint. Unlike the court-of-inquiry process, criminal trials do not originate from the judges who preside over them. Judges also do not summon the witnesses who appear in those cases or decide the inquiries to make of testifying witnesses. Unlike a criminal trial, no rights are adjudicated in a court of inquiry, no remedies are crafted, and no adjudicative findings are made. The only "finding" that can be said to result from the court-of-inquiry process is that there is or is not sufficient evidence for an arrest warrant to be issued. *See* Tex. Code Crim. Proc. art. 52.08. While it is true that a court of inquiry does not authorize a district court judge to pursue a criminal violation through conviction or acquittal, that is not what the Whistleblower Act requires. If it were, there would be precious few who would meet the statutory definition of "appropriate law enforcement authority." Such a conclusion is not a reasonable construction of the statute and is fundamentally at odds with the broad remedial measure the legislature enacted.

14

On a separate issue, the majority intimates a belief that district courts are excluded from the statutory definitions of "state governmental entity" and "local governmental entity." *See* Slip op. at 18-19 n.51, 37 n.114. Though the majority's discussion of this issue is relegated to two footnotes, it cannot be left unaddressed. The practical effect of construing the Whistleblower Act as the majority implies would extend far beyond merely barring a district court judge from ever being an "appropriate law enforcement authority." It would mean that district courts are wholly exempted from the Whistleblower Act's prohibitions and their employees denied its protections.

The breadth of the terms "state governmental entity" and "local governmental entity" is critical in determining whom the Act governs, whom the Act protects, and to whom protected reports must be made to invoke the Act's protections and prohibitions. The majority hints that district courts have been categorically excluded from these statutory terms and therefore could not ever be "an appropriate law enforcement authority" to whom a report could may be made under the Act. *See id*. Because the Whistleblower Act specifically protects "public employee[s]"—a term defined as those employed by "a state or local governmental entity"—such a holding would sweep away the Act's protection for all employees of district courts. It is unfathomable that this was the legislature's intent in enacting a statute whose purpose is "to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *See Barth*, 178 S.W.3d at 162; *see also City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008) ("The Whistleblower Act is a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption."). Because the broad statutory language encompasses every other nook and cranny of state and local government, *see* Tex. Gov't Code § 554.001(2), (5),

15

there is no reason why a statute of such obvious breadth would exclude from its protection—for no apparent purpose or reason—an entire category of governmental entities and employees.[3] Excluding district court employees from the Whistleblower Act's protection would simply be untenable given both the statute's evident purpose and its text as a whole.

When a term is specially defined in a statute, we are bound by the statutory definition. *Id.* § 311.011(b); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Undefined terms used in statutory definitions are afforded their ordinary meaning unless a different or more precise definition is apparent from the context of the statute. Tex. Gov't Code § 311.011(a); *TGS-NOPEC*, 340 S.W.3d at 439. In construing and applying statutory terms, our mandate is to ascertain and give effect to the legislature's intent.

The Whistleblower Act expansively defines the term "state governmental entity" to mean:

> (A)    a board, commission, department, office, or other agency in the executive branch of state government, created under the constitution or a statute of the state, including an institution of higher education, as defined by Section 61.003, Education Code;
>
> (B)    the legislature or a legislative agency; or

---

[3] The majority posits that wholesale exclusion of district courts from the Whistleblower Act can be explained to the extent such exclusion is necessary to preclude district courts from meeting the definition of "appropriate law enforcement authority." *See* Slip op. at 37 n.114 ("We would add that if the Legislature had actually contemplated that 'investigate or prosecute a violation of criminal law' could be construed to encompass district courts by virtue of chapter 52, this might well explain a decision to exclude such courts from the Act altogether."). But any need to limit the scope of the "appropriate law enforcement authority" definition does not explain a *categorical* exemption of district courts from the Act's anti-retaliation provisions.

(C)     the Texas Supreme Court, the Texas Court of Criminal Appeals, a court of appeals, a state judicial agency, or the State Bar of Texas.

Tex. Gov't Code § 554.001(5).  Thus, in broad terms, the Act defines "state governmental entity" to include the executive branch, the legislative branch, and the judicial branch of state government. Although the state's appellate courts are specifically listed in the judicial-branch component of the statute, district courts and other trial courts are not.  But if district courts are not included in the term "state judicial agency," the anomalous result would be that a relatively minor judicial agency—such as the Office of Court Administration, the Texas Supreme Court Rules Committee, the Texas Court Records Preservation Task Force, or the Judicial Committee on Information Technology—would constitute a "state judicial agency" that is governed by the Act, while a district court would not.  *Cf.* Tex. R. Jud. Admin. 12, *reprinted in* Tex. Gov't Code, tit. 2, subtit. F app. ("Judicial Agency means an office, board, commission, or other similar entity that is in the Judicial Department and that serves an administrative function for a court.  A task force or committee created by a court or judge is a 'judicial agency.'").  Likewise, other adjudicative bodies, such as the Board of Disciplinary Appeals and the State Office of Administrative Hearings, would arguably be governed by the Act and thus could be "an appropriate law enforcement authority" to receive reports of governmental malfeasance but a district court would not.  Such a construction of the Act would result in district courts being categorically exempted from the Act's anti-retaliation prohibitions.  This defies logic.

While we discern legislative intent primarily from the language of a statute, the statutory purpose "is the context in which the words speak."  *Jaster v. Comet II Constr. Inc.*, 57 Tex. Sup. Ct. J. 1005, 2014 WL 2994503, at * 20 (Tex. July 3, 2014) (Hecht, C.J., dissenting).

17

"When we can find that purpose without inventing it, and pursue it without adding or detracting from it, it should inform our interpretation." *Id*. Thus, it has long been a rule of statutory construction that "a statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat such manifest object, [the statute] should receive the former construction." *Citizens Bank v. First State Bank*, 580 S.W.2d 344, 348 (Tex. 1979).

Here, the breadth of the definitions in the Whistleblower Act evinces a legislative intent to apply the statute to all state and local governmental entities—so much so that it would be reasonable to expect the legislature to *specifically exclude* district courts if it had so intended, rather than finding such an exclusion by implication. Giving full effect to the language the legislature chose, it would be more consistent with the inclusiveness of the statute to recognize and embrace an overlap in the terms used, rather than resorting to extra-textual construction aids to unnecessarily exclude a broad category of governmental actors from the statute's broad scope. Although "we should avoid, when possible, treating statutory language as surplusage, . . . there are times when redundancies are precisely what the Legislature intended." *In re Estate of Nash*, 220 S.W.3d 914, 917-18 (Tex. 2007) (internal citations omitted). Indeed, statutory redundancies may mean that "the Legislature repeated itself out of an abundance of caution, for emphasis, or both." *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001). I believe that is the case here. Indeed, it is the only construction that makes sense in the context of the statute as a whole. If state district courts must come within the term "state judicial agency" in order for court employees to fall within the

protection of the Whistleblower Act, then common sense and reason dictate that district courts are so included, because any other construction defeats the statute's purpose.

Alternatively, the definition of "local governmental entity" could reasonably be construed as including state district courts based on the role such courts play in the state's governmental structure and their county- or district-level jurisdiction. As broadly defined in the Whistleblower Act, the term "local governmental entity" means "a political subdivision of this state" and expressly "includ[es]" in that term a "county," "municipality," "public school district," and "special-purpose district or authority." Tex. Gov't Code § 554.001(2). "'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." *Id.* § 311.005. District courts and other trial courts are not specifically mentioned and must therefore be included in the definition of "local governmental entity" if they would reasonably fall within the ambit of the undefined phrase "a political subdivision of this state." In general, the term "political subdivision" refers to "[a] division of a state that exists primarily to discharge some function of local government." *Black's Law Dictionary* 1346 (10th ed. 2014); *see American Heritage Dictionary of the English Language* 1015 (1973) (defining "political" to include "[o]f, pertaining to, or dealing with the . . . structure, or affairs of government . . . of the state . . . [having] a definite or organized policy or structure of government"), 1281 ("subdivision" means the act of "divid[ing] a part or parts of into smaller parts"). Consistent with the ordinary meaning of that term, district courts exercise delegated judicial authority over geographic subdivisions of the state and, as a practical matter, are conceptually indistinguishable from special-purpose districts, which are expressly included in the

19

"local governmental entity" definition. *See* Tex. Gov't Code § 554.001(2). Again, it defies logic that the legislature intended to extend the Whistleblower Act's protections and prohibitions to discrete special-purpose districts—for example, a crime-control district or a development district—but deny any protection to employees of district courts.

Regardless of whether a district court is properly characterized as a "state judicial agency" (state governmental entity) or "a political subdivision of the state" (local governmental entity), it is apparent that the Whistleblower Act's protections and prohibitions were intended to apply broadly to all levels of state and local government. Would the statute be clearer if district courts had been expressly mentioned? Certainly. Is the scope of the Act—and derivatively, its waiver of sovereign immunity—unclear because there is no such reference? No.

Given the statutory definitions, the common meaning of the undefined words used in them, the statute's purpose, and the onerous consequence of excluding district courts and their employees from these terms, I would hold that, under the circumstances presented here, a district court judge can be "an appropriate law enforcement authority" within the meaning of section 554.002(b) of the Whistleblower Act.

## CONCLUSION

The dominant purpose of the Whistleblower Act is "to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *Barth*, 178 S.W.3d at 162. The law must be liberally construed with a view of accomplishing this paramount purpose. I believe the majority's hypertechnical division of the court-of-inquiry process into discrete components and its overly restrictive reading of the

20

definitions and requirements in the Whistleblower Act amount to legalistic hairsplitting that subverts the legislative purpose and intent of the Act.  Because such technicalities and constructions should not be used to thwart the Act's purpose, I dissent.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed:   September 19, 2014