# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-14-00509-CV

---

**The University of Texas at Austin, Appellant**

**v.**

**Dijaira B. Smith, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-13-004318, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The University of Texas at Austin appeals the denial of the plea to the jurisdiction it filed in Dijaira B. Smith's suit brought pursuant to the Texas Whistleblower Act. *See* Tex. Gov't Code §§ 554.001-.009 (the Act). The University contends that the trial court erred in concluding that Smith made a good faith report of a violation of law to an appropriate law enforcement authority and, as a consequence, determining that it had subject-matter jurisdiction over Smith's claims. Because we conclude that Smith failed to make a report of a violation of law to an "appropriate law enforcement authority" as required to waive the University's governmental immunity, we reverse the order denying the plea to the jurisdiction and dismiss the suit for lack of subject-matter jurisdiction.

### BACKGROUND

Smith was formerly employed by the University as Director of Finance for the University Interscholastic League (UIL). In 2012, the University's Office of Internal Audits (Internal

Audits) began an investigation into allegations made against the UIL. Smith was asked to meet with auditors from Internal Audits. Smith told the auditors that: (1) the UIL's Executive Director had, in an effort to bolster a UIL vendor's application for a home loan, committed bank fraud by falsely representing to a mortgage lender that the wife of a UIL vendor would be working as a contract employee for the UIL; (2) the UIL had made unauthorized transfers of funds to the University's Division of Diversity and Community Engagement in violation of Texas Government Code section 771.004; (3) a UIL deputy director sexually harassed a UIL employee; (4) the same UIL deputy director used a vehicle identified as belonging to the Bridge City Independent School District while employed by the UIL; (5) the same deputy director sought to have Smith alter a government document in connection with an open records request; (6) the UIL employed actionable hiring and employment practices; and (7) the UIL failed to comply with laws governing its procurement of goods and services. Smith later met with University attorneys from the Office of the Vice President for Legal Affairs (Legal Affairs) and confirmed her earlier statements about the use of a Bridge City ISD vehicle and the transfer of funds between the UIL and the Division of Diversity and Community Engagement. According to Smith, after providing this information and cooperating with the auditors, she was subjected to a series of adverse employment actions culminating in the termination of her employment.

Thereafter, Smith filed suit alleging that the adverse employment actions, including the termination of her employment, were in violation of the Act. Smith claimed that the adverse employment actions were the direct result of her providing information to auditors from Internal Audits and to attorneys from Legal Affairs. In response, the University filed a plea to the jurisdiction

2

in which it asserted that the court lacked subject-matter jurisdiction over Smith's suit because she had failed to comply with the requirements for bringing a claim under the Act. Specifically, the University contended that Smith did not report a violation of law by UIL or its employees to an appropriate law enforcement authority. *See id.* § 554.002(b) (defining when report is made to "appropriate law enforcement authority" under Act). After a hearing, the trial court denied the University's plea to the jurisdiction. The University then perfected this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing party to pursue interlocutory appeal of trial court's ruling denying plea to jurisdiction filed by governmental unit).

### STANDARD OF REVIEW AND STATUTORY FRAMEWORK

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Subject-matter jurisdiction presents a question of law that appellate courts review de novo. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When subject-matter jurisdiction is premised on a cause of action under the Act, the plaintiff must allege facts which, if true, would establish a violation of the Act. *See State v. Lueck*, 290 S.W.3d 876, 880-81 (Tex. 2009). We begin with the allegations in Smith's live pleadings, which we construe liberally in favor of jurisdiction and, unless challenged with evidence, take as true. *See Miranda*, 133 S.W.3d at 226-27. We also consider any evidence relevant to the jurisdictional inquiry. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When, as here, the jurisdictional issues and facts

3

implicate the merits, the defendant is "put to a burden very similar to that of a movant for summary judgment." *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806-07 (Tex. App.—Austin 2009, no pet.). Consequently, only conclusive contrary evidence suffices to negate the existence of any of the jurisdictional facts Smith has pleaded. If the record raises a fact question that requires addressing the merits of the case in order to resolve jurisdiction, then the case may proceed. *Miranda*, 133 S.W.3d at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question, the court rules on jurisdiction as a matter of law. *Id.*

Section 554.0035 of the Act waives sovereign immunity when a public employee alleges a violation of the Act. *See* Tex. Gov't Code § 554.0035. A violation of the Act occurs "when a governmental entity retaliates against a public employee for making a good-faith report of a violation of law to an appropriate law enforcement authority." *Lueck*, 290 S.W.3d at 878 (citing Tex. Gov't Code § 554.002(a)). Thus, to qualify for the Act's waiver of immunity, Smith must have pleaded facts which, if true, establish a violation of section 554.002. To do so, Smith must have alleged the following elements: (1) she was a public employee; (2) she made a good faith report of a violation of law by her employing governmental entity or another public employer; (3) she made the report to an appropriate law enforcement authority; and (4) she suffered retaliation as a result of making the report. *See* Tex. Gov't Code § 554.002(a).

## DISCUSSION

The University's plea to the jurisdiction did not contest that Smith was a public employee, that she made a good faith report of a violation of law by her employing governmental entity, or that she suffered retaliation as a result of making the report. The gravamen of its plea to

4

the jurisdiction is its assertion that Smith did not meet her burden as to the third element of her Whistleblower cause of action, i.e., that she made her report to an "appropriate law enforcement authority," as that term is defined in the Act.

The Act provides that a report is made to an "appropriate law enforcement authority . . . if the authority is part of a state or local government entity or the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id*. § 554.002(b). "[A]n appropriate law-enforcement authority must be actually responsible for regulating under or enforcing the law allegedly violated. It is not simply an entity responsible for ensuring internal compliance with the law allegedly violated." *University of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 685 (Tex. 2013). The Act does not protect reports made to supervisors with power only to oversee internal compliance within an entity. *See Texas Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 615-16 (Tex. 2014). Such reports are not protected even if the supervisors are obligated to forward complaints to another department that does have outward-looking authority to regulate under or enforce the law alleged to be violated or to investigate or prosecute criminal violations against third parties. *Id.*

To satisfy the requirement that a report be made to an "appropriate law enforcement authority," a plaintiff seeking protection under the Act must prove either that the report was made to an appropriate law enforcement authority or that the employee had a good-faith belief that it was. *Id.* at 614. "An employee's belief is in good faith if: (1) the employee believed the governmental entity qualified, and (2) the employee's belief was reasonable in light of the employee's training and

5

experience." *Id.* (citing *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002)). The "second element is an objective one," and the employee only receives protection under the Act "if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority." *Id.*; *see also Texas Comm'n on Envtl. Quality v. Resendez*, 450 S.W.3d 520, 522 (Tex. 2014) ( explaining that claimant must satisfy both subjective and objective requirements); *Gentilello*, 398 S.W.3d at 689 (stating that Act "restricts 'law-enforcement authority' to its commonly understood meaning"). The good-faith inquiry "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Gentilello*, 398 S.W.3d at 683 (citing *Needham*, 82 S.W.3d at 321 (emphasis in original)).

### Did Smith Report to an Appropriate Law Enforcement Authority?

In her live pleadings, Smith alleged that she made reports of the alleged violations of law to Internal Audits and Legal Affairs, but she does not allege specific facts that meet her burden of demonstrating that she had a good faith belief that either Internal Audits or Legal Affairs were "appropriate law enforcement authorities." *See City of Elsa*, 325 SW.3d at 625 (conclusory pleadings do not provide sufficient jurisdictional facts to determine if trial court had jurisdiction). We look, then, to any evidence that would support this required jurisdictional fact. *See id.* (considering whether there was evidence that would establish existence of required jurisdictional facts). Smith's response to the University's plea to the jurisdiction referred the trial court to her deposition testimony. In that testimony, Smith acknowledged that she knew that the function of Internal Audits was limited to internal compliance issues. Smith testified to the following:

6

Q: What was [Internal Affairs'] function at U.T.—Austin?

A: It's to ensure that U.T. departments were complying with The University of Texas at Austin, U.T. System, and the law, any other law applicable, to ensure that they were in compliance with those laws—and to take actions if the law—law regulations were not in compliance.

Q: What type of action do you believe [Internal Audits] could take?

A: I believe that they could terminate employment. It's one of them. I believe that if the violation was applicable, they would—move forward to other enforcement agencies, and I believe that they had the authority to enforce.

Smith further testified that she believed that Internal Audits could ensure only that University employees, and "not outsiders," were in compliance with applicable rules, regulations, and laws. Smith also stated that she believed Internal Audits "made the law for U.T., and if the law goes beyond the U.T. boundaries, they would take actions" by which she meant that they would report violations of the law to "other government agents, the law enforcement agents."

In response to interrogatories propounded by the University regarding her report of bank fraud to Internal Audits, Smith stated that she believed that Internal Audits "could investigate violations of the [] law, with corresponding duties to forward the fruits of such investigation to proper prosecutorial authorities." In her deposition testimony, Smith confirmed her belief that Internal Audits was limited to investigating issues related to the University and that it did not have the authority to interfere with the activities of other State agencies. She testified that, although she did not know whether Internal Audits had the authority to prosecute anyone for bank fraud, she believed that if it discovered such conduct it would "move forward" and report it to other authorities. With respect to the transfers of money between agencies she alleged to be in violation of the

7

Government Code, Smith's interrogatory responses stated that she believed that Internal Audits and Legal Affairs were authorized to "regulate under and enforce against violations of Government Code Section 771.004 by U.T. employees," investigate any such violations and "pass the fruits of such investigation to appropriate prosecutorial authorities." Smith's deposition testimony was consistent with her interrogatory response. Smith also testified that the basis for her belief that Legal Affairs was a law enforcement authority was simply that they were the University's lawyers and because Internal Audits asked Legal Affairs to participate in the investigation.

Even if Smith's testimony were sufficient to meet the subjective component of her required good faith belief that either Internal Audits or Legal Affairs was an "appropriate law enforcement authority," we must also consider whether such a belief is reasonable given Smith's training and experience. *See, e.g.*, *Gentilello*, 398 S.W.3d at 683 (even if employee "honestly believed" she reported to appropriate authority, belief can only satisfy good faith requirement "if a reasonably prudent employee in similar circumstances" would have thought so). In *Gentilello*, the Texas Supreme Court explained what constitutes an appropriate law enforcement authority under the Act:

> The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement status. Indeed, holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law enforcement authorities under the Act. Such a result would collide head-on with the Act's limited definition and our cases interpreting that definition.

8

*Id.* at 686; *see also Okoli*, 440 S.W.3d at 616 (reaffirming that internal report of wrongdoing does not trigger Act's protection unless it is made directly to authority with outward-looking law enforcement power). In *Gentilello* the court emphasized that the Act's restrictive definition of "appropriate law enforcement authority" is "tightly drawn" and centers on law enforcement, not law compliance. *See Gentilello*, 398 S.W.3d at 689; *see also Texas A & M Univ.–Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013). Correspondingly, "a whistleblower cannot reasonably believe his supervisor is an appropriate law-enforcement authority if the supervisor's power extends no further than ensuring the governmental body *itself* complies with the law." *See Gentilello*, 398 S.W.3d at 689 (emphasis in original).

The record fails to demonstrate that either Internal Audits or Legal Affairs possessed the requisite outward-looking authority to constitute an "appropriate law enforcement authority" under the Act, and Smith acknowledged as much in her deposition. Instead, she testified that she believed that Internal Audits and Legal Affairs could forward her report to the authorities that could prosecute or enforce the alleged violations. But even when an agency's policy is to forward reports to the agency's enforcement arm, "reports up a chain of command" are not sufficient under the Act. *See Resendez*, 450 S.W.3d at 522 (citing *Okoli*, 440 S.W.3d at 614 (collecting cases)). "When an employee reports wrongdoing internally with the knowledge that the report will have to be forwarded elsewhere . . ., then the employee is not reporting '*to* an appropriate law enforcement authority.'" *Okoli*, 440 S.W.3d at 615 (emphasis in original). "Although such a policy permits employees to reasonably believe reports will be *sent* to an appropriate law-enforcement authority, it provides no reason to believe the reported-to supervisors *are* appropriate authorities." *Office of the Att'y Gen.*

9

*v. Weatherspoon*, ___ S.W.3d ___, No. 14-0582, 2015 WL 5458683, at *2 (Tex. Sept. 18, 2015) (emphasis in original). We do not believe that a reasonable employee in circumstances similar to Smith's would have believed that Internal Audits or Legal Affairs was an appropriate law enforcement authority. *See Gentilello*, 398 S.W.3d at 682 (noting Act's requirement that report be made to one with "free-standing regulatory, enforcement, or crime-fighting authority").

On appeal, Smith relies principally on her argument that because Internal Audits and Legal Affairs are part of the University of Texas System, and because the University of Texas System also has as one of its components the University of Texas Police Department, Internal Audits and Legal Affairs are "part of a state or local governmental entity" authorized to investigate or prosecute a violation of criminal law. *See* Tex. Gov't Code § 554.002(b)(2) ("appropriate law enforcement authority" includes authority that is part of state or local governmental entity that employee in good faith believes is authorized to investigate or prosecute violation of criminal law). The supreme court has recently rejected a similar argument made by the employee in *Office of the Attorney General v. Weatherspoon*. 2015 WL 5458683, at *3. In *Weatherspoon*, Ginger Weatherspoon, who worked as an assistant attorney general in the Child Support Division of the Office of the Attorney General, claimed to have had her employment terminated as a result of her reporting alleged violations of criminal law by two senior attorneys to her managing attorney, to the Child Support Director and the Deputy Director of Child Support, and to an attorney in the Open Records Department. *See id.* at *1. Weatherspoon argued that because the Office of the Attorney General has an Ethics Advisor, a Criminal Investigation Division, and statutory authority to prosecute certain crimes, the Office of the Attorney General had the requisite outward-looking

10

authority such that her reports were made to an "appropriate law enforcement authority." *Id.* at *3. The supreme court held that this argument failed because "the authority of some OAG divisions to investigate or prosecute crime does not transform the entire OAG into an appropriate law-enforcement authority." *Id.* The court stated that: "An entire agency does not become an appropriate law-enforcement authority merely because some divisions have such power." *Id.* Guided by this supreme court precedent, we conclude that the existence of the University of Texas Police Department within the University of Texas System does not make Internal Audits or Legal Affairs "appropriate law enforcement authorities" under the Act.

## CONCLUSION

Because Smith cannot establish that her actions satisfy the Act's requirement that she have made a report to an "appropriate law enforcement authority," as that term is defined in the Act, the University remains immune from this suit. Accordingly, we reverse the trial court's order denying the University's plea to the jurisdiction, grant the plea, and dismiss Smith's suit for lack of subject-matter jurisdiction.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Reversed and Dismissed

Filed: November 25, 2015

11